# CHARLESTON.

## DAVIS *v.* WESTERN UNION TELEGRAPH CO.

### Submitted February 6, 1899—Decided March 22, 1899.

1. TELEGRAPH COMPANIES—*Regulations—Office Hours.*

     A telegraph company has the right to provide reasonable regulations as to the hours during which its offices shall be open for the transmission and delivery of messages; the reasonableness of the regulation varying with character of the locality where the particular office is situated, and ordinarily being a question for the court.   (p. 50).

2. TELEGRAPH COMPANIES—*Delivery of Messages—Damages.*

     Where there is no averment or proof that a telegraph company, in failing to deliver a message promptly, acted wantonly or oppressively, or with such malice as implied a spirit of mischief or criminal indifference to civil obligations, the jury is not warranted, in a suit against such company for damages for such failure, in awarding punitive or vindictive damage.   (p. 54).

3. DAMAGES—*Mental Suffering.*

     Mental suffering alone, and unaccompanied by other injury, cannot sustain an action for damages, or be considered as an element of damages.   Anxiety of mind and mental torture are too refined and vague in their nature to be subject to pecuniary compensation in damages, except where, in cases of personal injury, they are so inseparably connected with the physical pain, that

they cannot be distinguished from it, and are therefore considered a part of it.   (p. 53).

4.   TELEGRAPH COMPANY—*Damages—Delivery of Messages.*

   Where a suit for damages against a telegraph company is predicated upon the alleged fact that the delay in the transmission and delivery of a message prevented plaintiff from attending the burial of his mother, and the proof shows that the message was received at 1 o'clock, A. M , and was delivered promptly at the beginning of office hours in the morning, which message was so uncertain and vague as to fail to inform plaintiff of his mother's death, so that he was compelled to wire repeatedly before ascertaining the fact, and after receiving the message he could have attended the funeral if he had acted promptly, he can recover no damages in such action.   (p. 54).

   Error to Circuit Court, Mingo County.

   Action by Claude R. Davis against the Western Union Telegraph Company. There was a judgment for plaintiff, and defendant brings error.

                                        *Reversed.*

   SIMMS & ENSLOW and HERBERT FITZPATRICK, for plaintiff in error.

   H. K. SHUMATE, for defendant in error.

ENGLISH, JUDGE:

   On the 30th of September, 1895, at 7:45 in the evening, a message was delivered to the Western Union Telegraph Company, at Charlottesville, Va., in the following words, "Come at once," signed, "Willie Davis," to be sent to Claude Davis, Williamson, W. Va., which message was received by the operator at Williamson about one A. M., October 1st, but was not delivered until between eight and nine that morning.   On March 21, 1896, said Claude Davis instituted an action of trespass on the case against said telegraph company, alleging in his declaration that by reason of the negligence of the defendant to promptly transmit said message to plaintiff over its line from Charlottesville, and in failing to deliver it promptly, he was not notified in sufficient time to be at the funeral of his mother; and he claims fifteen hundred dollars damages.   On September 22, 1896, the case was submitted to a jury, and resulted in a verdict for the plaintiff for five hundred dollars damages.   Thereupon defendant moved to set aside said

4

verdict and grant it a new trial, which motion was over-ruled, and the defendant excepted and took a bill of exceptions; and the court rendered judgment upon the verdict. The defendant then applied for and obtained this writ of error.

During the trial the defendant asked the court to give the jury several instructions,—among them, the following, marked No. 2: "The court further instructs the jury that if they find from the evidence that the Western Union Telegraph office at Williamson, W. Va., had a rule that messages would not be received or delivered after 9 o'clock in the evening and before 8 o'clock in the morning, then that was a reasonable rule, and the plaintiff cannot recover any damages in this case for the failure of the de-fendant to deliver it before 8 o'clock in the morning of October 1, 1896, although it may have come to the Williamson office at 1 o'clock A. M. on October 1, 1896." The action of the court in refusing to give this instruction when asked for by the defendant is relied on as the first ground of error, and involves the question as to the right of a telegraph company to make reasonable rules and regulations for the transaction of its business. On this question, under the head of "Liability of Telegraphs and Telephones" (25 Am. & Eng. Enc. Law, 785), the law is stated thus: "The company has the right to provide reasonable regulations as to the hours during which its offices shall be open for the transmission and delivery of messages; the reasonableness of the regulation varying with the character of the locality where the particular office is located, and ordinarily being a question for the court." Thompson, in his work on Corporations (volume 1, § 937), speaking of the distinction between by-laws and regulations, says: "It is believed that the only sound distinction is that the by-law is more usually established for the government of the internal affairs of the corporation, while the regulation is established for the government of those concerned with it in its buisness, or rather for the government of its business with the public. In either case the sound rule is believed to be that the reasonableness of the rule is a question for the court." Morawetz (Priv. Corp. § 501) says: "Companies which are engaged

in enterprises of public character frequently adopt and publish rules for the government of those who enter into transactions with them. These rules or regulations are sometimes called 'by-laws,' but are obviously different from the ordinary by-laws passed by private corporations for the regulation of their own management. By-laws of the latter class are binding upon the members of a corporation by virtue of the implied terms of their contract. Those of the former class are merely terms or conditions made binding upon all persons who choose to deal with the corporation." In the case of *Telegraph Co.* v. *Harding*, 103 Ind. 505, (3 N. E. 172), it was held that: "Under section 4176, Rev. St. 1881. a telegraph company may regulate reasonably its office hours according to the requirements of the business at the various points where it holds itself out for public service. The penalty for failing to reasonably transmit a message is not incurred unless there is a failure to receive and transmit during the usual office hours, both at the point where the message is received and that to which it is transmitted." The court, after quoting the statute which provides, in substance, that companies engaged in telegraphing for the public shall, during the usual office hours, receive dispatches, and, on payment of the usual charges, transmit the same, with impartiality and good faith, in the order of time which they are received, under penalty, etc., uses the following language: "The statute recognizes the common-law right of the company to make reasonable regulations for the transaction of its business. * * * It cannot be implied that, because the public service may require that its office hours should include a given time at one point, all other offices or places at which it serves the public must be open and fully equipped for such service an equal length of time. No reasonable requirement would demand this." That the question as to the reasonableness of a regulation of this character is for the court, and not for the jury, see *Vedder* v. *Fellows*, 20 N. Y. 126. In the case of *Telegraph Co.* v. *Neel*, 86 Tex. 368 (25 S. W. 15), the syllabus reads thus: "A telegram was sent from Yoakum to Cuevo, Tex., July 29, 1891, at 4 o'clock A. M. The message reached Cuevo at 4:50. The office hours at

Cuevo were from 7 A. M. to 7 P. M. The carrier boy did not reach the office before 7 A. M., and the message was promptly delivered after the opening of the office. In a suit for damages for delay in delivering the message, in which recovery was had by the plaintiff, the court should have given the following requested charge: 'All messages to be sent by telegraphic wire are accepted subject to the delays ordinarily incurred during transmission, and if the jury believe from the evidence that the defendant company had reasonable office hours, during which it delivered telegraph messages in the town of Cuevo, it was not by law compelled to deliver messages outside of said hours; and such reasonable office hours were implied in the contract between the plaintiff and the defendant company, if such contract has been proved, unless specially stated or understood by the parties to said contract that the service to be performed should be performed otherwise than in the usual manner, and subject to the usual rules under which the company does business.' " See *Telegraph Co.* v. *May*, 8 Tex. Civ. App 176, (27 S. W. 760). So, also, in *Birdey* v. *Telegraph Co.*, 18 Md. 342, it was held that: "A telegraph company is not a common carrier, but a bailee, performing, through its agents, a work for its employer according to certain rules and regulations, which, under the law, it has a right to make for its government. A party sending messages by telegraph is supposed to know that the engagements of the company are controlled by such rules and regulations, and, in law, ingrafts them in his contract of bailment, and is bound by them.." To the same effect, see *Telegraph Co.* v. *Gildersleve*, 29 Md. 232, and *Gien* v. *Telegraph Co.*, 24 Fed. 119, in which the court held: "It was not the duty of a telegraph company, with offices scattered all over the United States, to keep the employes of every one of its offices in the country, or in any one State, informed of the time when every other office closes for the night." Other authorities might be added to the same effect, recognizing the right of telegraph companies to make reasonable rules and regulations for the conduct of their business; but these are deemed sufficient to indicate the weight and tendency of the authorities on the question, and, in my opinion, justify us in

holding that the circuit court erred in refusing to give said instruction No. 2 to the jury.

The second assignment of error claims that the court erred in refusing instructions Nos. 3 and 4 asked for by defendant, because there was no evidence whatever tending to prove any physical injury sustained by plaintiff, and there can be no assessment of damages for mental anguish. By instruction No. 3, defendant asked to instruct the jury that, from the evidence in the case, plaintiff was not entitled to recover any damages for mental anguish or disappointment in failing to attend his mother's funeral. This instruction should have been given to the jury, and the court erred in refusing it. We find the law thus stated in Jaggard on Torts (volume 1, p. 369), under the head, "Mental Suffering:" "While the general analogy from other actions in tort, and other potent considerations, justify such actions, the general trend of decisions denies, in the absence of statute, the right to recover for mental suffering, unaccompanied by other injury, resulting from failure to deliver a telegraphic message. Where, however, one has established his cause of action for harm to his person, property, or reputatoin, he may then recover for injured feelings and mental suffering." As to the first proposition, see *Summerfield* v. *Telegraph Co.*, 87 Wis. 1, (57 N. W. 973); *Chapman* v. *Telegraph Co.*, 88 Ga. 763, (15 S. E. 901); *Tyler* v. *Telegraph Co.*, 54 Fed. 634. And that such is the law has been held in many of our States, and in the United States Supreme Court in the case of *Kennon* v. *Gilmer*, 131 U. S. 26, (9 Sup. Ct. 696). In 1 Am. & Eng. Enc. Law, 862, we find the rule of law stated thus: "A rule that is more consistent with recognized legal principles, and that is supported by better authority, is that mental suffering alone, and unaccompanied by other injury, cannot sustain an action for damages, or be considered as an element of damages. Anxiety of mind and mental torture are too refined and too vague in their nature to be the subject of pecuniary compensation in damages, except where, as in case of personal injury, they are so inseparably connected with the physical pain that they cannot be distinguished from it, and are therefore considered a part of it;" citing many authorities. But, aside

from this, the question is whether, from the facts proven, the plaintiff was prevented from being present at his mother's funeral by reason of the message not being delivered to him until 9 o'clock the next morning. The message, "Come at once," appears to have been so vague and unsatisfactory that, no matter when it was delivered, it failed to inform the plaintiff why he was wanted at once; and, from the exhibits filed with P. A. Walstrum's deposition, it appears that the plaintiff at 9:32 A. M., October 1st, telegraphed to M. T. Eddins, at Charlottesville: "Wire quick what is the matter at home. Am waiting answer." And again, at 4:22 in the afternoon, he wires to same: "Send this to Willie. Find out what is the matter, if I must come in haste." And at 3:15 P. M. a message was sent to plaintiff informing him of his mother's death. So it is perceived that the delayed message did not inform plaintiff of the death of his mother, and it was so vague and unsatisfactory that he was compelled to send repeated messages to Charlottesville before he received any information as to the urgency of his call to that place. It is therefore apparent that the proximate cause of the damage, if any was sustained, was the want of explicitness in the message which he claims was improperly delayed. The verdict of five hundred dollars, under the circumstances, was excessive and unwarranted. The testimony shows that, if the first message received by him had informed him of his mother's death, he could, by acting promptly, have reached Charlottesville, and attended her funeral, by using the Chesapeake & Ohio Railroad. Again, there is no allegation in the declaration that the defendant acted wantonly or oppressively, or with such malice as implied a spirit of mischief or criminal indifference to civil obligations; and, if it did, the proof does not sustain any such allegation, and without such averment and proof the jury could not award exemplary, punitive, or vindictive damages. Such is the rule laid down by this Court in *Mayer* v. *Frobe*, 40 W. Va. 249, (22 S. E. 58). In *Railroad Co.* v. *Prentice*, 147 U. S. 107, (13 Sup. Ct. 263), Justice Gray says: "In this Court the doctrine is well settled that in actions of tort, the jury, in addition to the sum awarded by way of compensation for the plaintiff's

injury, may award exemplary, punitive, or vindictive damages, sometimes called 'smart money, if the defendant has acted wantonly or oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations. But such guilty intention on the part of the defendant is required in order to charge him with exemplary or punitive damages;" citing numerous authorities. The jury, in the case we are considering, could not have found the verdict it did without giving punitive damages; and, under the law above quoted, they were not warranted in so doing.

My conclusion, therefore, is that the court erred in rejecting the instructions asked for by the defendant, and in overruling the motion to set aside the verdict and award the defendant a new trial, and in entering judgment upon the verdict. The judgment complained of is therefore reversed, the verdict set aside, and a new trial is awarded the defendant.

*Reversed.*