EDNA TOLER

*v.*

C. C. CASSINELLI

(No. 9817)

Submitted September 10, 1946.  Decided November 12, 1946.

*Bailey & Shannon,* for plaintiff in error.

*W. M. Holroyd* and *Ray Toler,* for defendant in error.

LOVINS, JUDGE:

Edna Toler instituted this action in the Circuit Court of Wyoming County against C. C. Cassinelli and Wyoming Theaters Company, a corporation, for recovery of damages she allegedly suffered when her apartment, leased to her by Cassinelli, was padlocked by him. The jury returned a verdict in favor of plaintiff and against Cassinelli in the amount of one thousand dollars, on which judgment was rendered. This writ of error was granted to review that judgment.

On or about August 4, 1944, plaintiff, then unmarried, rented from defendants a two-room apartment situated in the Town of Mullens, and agreed to pay as rental therefor the sum of twelve dollars, fifty cents for each period of two weeks she occupied the premises. Plaintiff paid the rent until her marriage to Earsel Toler, which took place on or about November 21, 1944. After that time plaintiff's husband assumed the payment of the rent.

Defendant was paid by plaintiff's husband for the rental period ending December 19, 1944. During the month of January, 1945, defendant became insistent that the amount due for rental from December 19, 1944, be paid. On two occasions the husband promised to pay the past due rent, but, having failed to do so, Cassinelli on January 31, 1945, caused a hasp and padlock to be placed on the doors of the apartment in the absence of plaintiff and her husband, who were then at their respective places of employment some distance from Mullens.

The husband ascertained that the doors had been locked about three-thirty o'clock in the afternoon of January 31, 1945, went to Cassinelli's office, and was there informed that the doors had been locked at Cassinelli's directions, who at that time was absent from Mullens. Plaintiff returned to Mullens about eleven o'clock on the

night of January 31, 1945, and was met at the bus station by her husband, who apprised her that the doors of the apartment were locked. They went to the apartment, found the lock on the doors, and, without attempting to remove it, walked about a half mile to the home of the husband's parents, where they spent the night, occupying a bed in the basement.

Plaintiff suffered inconvenience and discomfort because the weather was very cold and the bed clothing insufficient. Plaintiff testified that she was then ill, under the care of a physician, and that medicines prescribed by him, her clothing and household furnishings, and other personal belongings were locked in the apartment; that as a consequence she was compelled to buy uniforms for use in her employment, as well as other clothing; that her physicial condition became worse and she became nervous and upset by reason of the locking of the apartment; and that she was humiliated and embarrassed when she was required to explain to her "boss" and fellow-employees that she was late because she was locked out of her apartment.

Plaintiff's husband on February 1, 1945, consulted an attorney, who requested Cassinelli to remove the lock, which he refused to do until the arrearages of the rent were paid. Thereafter plaintiff's husband paid the rent to January 31, 1945, but plaintiff and her husband allowed their property to remain in the apartment until February 23, 1945, for which period no rent was charged.

The original declaration alleged that she was entitled to the use of the premises and that defendants wilfully and maliciously locked the apartment; that she suffered damages by reason of the facts hereinbefore stated; and that she also suffered mental and physical pain.

Defendant, Wyoming Theaters Company, filed a verified plea alleging that it had been dissolved and had no existence as a corporation at the time of the alleged injuries. Thereafter plaintiff filed an amended declaration, in which Cassinelli alone was charged with violat-

ing plaintiff's legal rights, but the record shows no formal dismissal of the corporate defendant.

Cassinelli then filed an affidavit alleging nonjoinder of parties plaintiff in that the husband should have been joined as a party plaintiff. Defendant filed a demurrer and amended demurrer to the declaration, assigning grounds that the declaration contained no averment as to the right of plaintiff to occupy the premises; that the declaration did not aver that defendant owed plaintiff any legal duty; that no breach of any duty was alleged; that the declaration alleged a breach of contract; and that there was a misjoinder of the actions *ex contractu* and *ex delicto*. Plaintiff was then permitted by order of court to insert an allegation in the declaration by way of amendment to the effect that defendant was joint owner of the premises, and that he owed plaintiff a duty not to disturb or interfere with her use and possession thereof. The record does not show a formal plea on the part of Cassinelli, but it appears from the order submitting the case for trial that the demurrer and amended demurrer to the declaration were overruled, that issue was joined, a jury was impanelled, and that the issue was submitted to the jury upon the evidence and arguments of counsel.

On motion of defendant the court submitted to the jury the following interrogatories: "How much do you find, if any, as compensatory damages? A————"; and "How much do you find, if any, as exemplary damages? A————". The jury returned to court and announced that it had agreed upon a verdict, which consisted of an answer to the second interrogatory, showing that the jury had found one thousand dollars exemplary damages. Counsel for plaintiff prepared a writing, reading as follows: "We, the jury, upon the issues joined between Edna Toler, plaintiff, and Charles C. Cassinelli, defendant, find for the plaintiff and assess her damages at $1,000.00." This writing was signed by the foreman of the jury. The writing was then read to the jury, and, upon being questioned if the writing above

quoted was their verdict, they replied in the affirmative and the jury was discharged.

Counsel for defendant moved the court to enter judgment in his favor, contending that the special finding by the jury, as shown by the interrogatories quoted, is inconsistent as there was no general verdict rendered by the jury, which was overruled. Defendant then moved the court to set aside the verdict and grant him a new trial, assigning grounds in support of said motion, which motion likewise was overruled, and the court rendered judgment for plaintiff in the amount stated above.

Errors assigned by defendant are summarized: (1) That it was error to overrule the demurrer to the declaration as finally amended; (2) that the opening statement of plaintiff's counsel was improper and prejudicial to defendant, and that objections thereto should have been sustained; (3) that the trial court erred in admitting illegal evidence over objection of defendant; (4) that instructions requested by defendant and refused by the trial court should have been given; and (5) that as a matter of law the verdict was in favor of defendant and the court should have amended the same, or, failing to do so, that the verdict should have been set aside.

The declaration, as finally amended, alleged the right of plaintiff to the use and occupancy of the apartment; that defendant was the joint owner of the premises; that he rented the apartment to plaintiff; that it was his duty to refrain from interfering with plaintiff's use and occupancy; that he failed to perform that duty; and that damages resulted from defendant's act. The declaration contains sufficient averments to inform defendant of plaintiff's alleged cause of action and nothing was omitted essential to the action or the defense thereof. The declaration was, therefore, sufficient. Code, 56-4-37.

The assignment of error relative to the opening statement of plaintiff's counsel cannot be considered as the record does not show what was said by counsel in the

opening statement, or that objection was made to his remarks.

On cross-examination plaintiff's counsel propounded questions, answers to which would tend to show that Cassinelli had lived in Italy and to name the ruler of that country in 1926. No objection was made by defendant to the questions with respect to where defendant had lived before coming to Mullens, but upon objection the court refused to admit evidence to show who was the ruler of Italy in 1926. Clearly the questions above mentioned were immaterial, and had no bearing on the issues before the jury. But we fail to see that prejudice resulted to defendant, even had there been an objection thereto.

It is argued by defendant that the jury was actuated by passion and prejudice. What we have said with reference to counsel in asking immaterial and improper questions substantially disposes of this contention. True, at the time of the trial citizens of Italian extraction may have been the object of enmity and condemnation because of the war, but from this record we cannot attribute to the jury any prejudice or passion in the rendition of its verdict on that ground alone.

Over his objection, defendant was required to testify that he did not institute an action of unlawful entry and detainer, or procure a distress warrant to vindicate his rights as a landlord. Plaintiff's counsel also questioned defendant with reference to locking people out in the State of Kentucky, where defendant had formerly lived, and whether defendant had taken the law into his own hands in locking plaintiff's apartment. Plaintiff's counsel made a statement in the presence of the jury which could be construed that he thought that defendant had in this instance acted in disregard of law. The pleadings and admissions of defendant show that he was attempting to assert his rights as a landlord without resorting to the courts, but whether defendant was attempting to take the law into his own hands, was an

immaterial conclusion. The action of counsel in propounding such questions and making the statement during the taking of evidence is disapproved, but since the record shows that defendant denied locking anybody out in the State of Kentucky,.and the other evidence on that subject is clearly immaterial, we do not see that defendant suffered any prejudice.

Plaintiff was permitted to testify, without objection, that she was sick before she was locked out of her apartment, and that thereafter her physical condition became worse. She was permitted, over objection, to testify that because of being late at her place of employment, she was compelled to tell her superior and her fellow-employees that she was locked out of her apartment, and that "she felt pretty bad to say" that she had nowhere to stay and was without clothing. Had plaintiff suffered such personal injury that her feeling of humiliation and embarrassment can be considered as an element of damages?

In an action by a widow under Section 26, Chapter 32, Code, 1906, to recover damages from a defendant for injury to her person and to her means of support, resulting from the illegal sale of intoxicants to her husband, it was held that the evidence must show physical injury or impairment of health resulting from the acts or conduct of the husband. *Pennington* v. *Gillaspie,* 66 W. Va. 643, 66 S. E. 1009. "Mental suffering alone, and unaccompanied by other injury, cannot sustain an action for damages, or be considered as an element of damages. Anxiety of mind and mental torture are too refined and vague in their nature to be the subject of pecuniary compensation in damages, except where, as in case of personal injury, they are so inseparably connected with physical pain they cannot be distinguished from it, and are therefore considered a part of it." *Davis* v. *Telegraph Co.,* 46 W. Va. 48, 53, 32 S. E. 1026. The *Davis* case states the general rule, subject to certain statutory exceptions not here pertinent. In the instant case the defendant by unreasonable and wilful conduct ag-

gravated plaintiff's preexisting illness, and caused her to suffer physical discomfort. The humiliation and mental pain may be considered as an element of damages. *Chesapeake & Potomac Telephone Co.* v. *Carless,* 127 Va. 5, 102 S. E. 569. See 1 Sedgwick on Damages, Ninth Ed., Sections 42-43. Where unreasonable and wilful action by defendant inflicts indignity, humiliation and insult on plaintiff, resulting in mental pain and suffering, they are a just basis for compensatory damages. *Jones* v. *Hebdo,* 88 W. Va. 386, 106 S. E. 898. See *Johnson* v. *Railway Co.,* 82 W. Va. 692, 97 S. E. 189. In this case the evidence tends to show that plaintiff was deprived of the use of her apartment on a cold night; that she suffered physical discomfort and inconvenience; that she was ill; and that her physical condition became worse. It further tends to show that her unfortunate situation became known to her superior and fellow-employees. It was embarrassing and humiliating for her to be compelled to say that she had been deprived of the use of her apartment and clothing, and defendant's act rendered it necessary for her to purchase additional clothing. In the circumstances here shown, evidence of mental pain and suffering was properly admitted for consideration by the jury in arriving at the amount of damages, if any, necessary to compensate plaintiff therefor.

Defendant's instruction No. 2, given over plaintiff's objection, was erroneous, in that the jury was informed that plaintiff should have removed the padlock. To require her to do so would involve taking the risk of destroying the lock and hasp which she did not own. Defendant cannot take advantage of an erroneous instruction given at his instance. *Dangerfield* v. *Akers,* 127 W. Va. 409, 33 S. E. 2d 140; *McElhinny* v. *Minor,* 91 W. Va. 755, 114 S. E. 147; *James Sons Co.* v. *Hutchinson,* 79 W. Va. 389, 90 S. E. 1047.

The principal ground of defendant's complaint, relative to instructions, is the refusal to give instructions Nos. 2-a and 3-a. Instruction No. 2-a, by the first and

second paragraphs would have informed the jury that this action was based on tort, that Cassinelli had no right to padlock plaintiff's apartment, and that plaintiff had a legal right to possession of the premises and to remove the padlock, notwithstanding she was in arrears in the payment of rent. The concluding paragraph of the instruction is as follows: "You are further told that in all cases of an injury by one person to another, it becomes and is the duty of the injured person to do such things, or make such efforts, as were reasonably in her power to minimize the damage to herself; and you are further instructed that if you believe from the evidence that she failed or made no effort to remove the said padlock from her door, as she had the legal right to do, then she is only entitled to recover nominal damages." The vice of instruction No. 2-a is the same as that contained in instruction No. 2. She was not required to minimize her damages by taking the risk of doing an unlawful act. Instruction 2-a was properly refused.

Defendant's instruction No. 3-a read as follows: "The court instructs the jury that, if you believe from the evidence that the defendant placed a padlock on the door of the leased premises, for the purpose of excluding the plaintiff from said premises, but not re-entering same, she had a right to remove said padlock; and you are further instructed that if the plaintiff elected not to remove said padlock and sought shelter elsewhere, or abandoned said premises, she cannot recover any sum for damages based upon alleged humiliation or mental worry, but if she is entitled to recover damages, if any, it would be for a sum proven by a preponderance of the evidence and which can be ascertained or calculated by the jury from such evidence." As hereinabove stated, plaintiff had no right in the circumstances of this case to remove the padlock, nor is there any evidence showing that plaintiff abandoned her apartment. She was compelled to go elsewhere to sleep on a cold night from force of circumstances. Instruction No. 3-a was properly refused.

One of the grounds assigned by defendant for setting aside the verdict was that there was no plea by defendant and therefore no issue. This ground is not sufficient to vitiate the verdict. The order impanelling the jury shows the issue, though not formally made up, was submitted to the jury, and that the trial proceeded as if such issue had been made upon the matters in difference between the parties. Code, 58-1-2.

Another ground assigned for setting aside the verdict is that the jury's finding on the primary issue was for the defendant. We see no merit in that contention. No affirmative action by the jury is disclosed by this record showing that the verdict favored defendant.

Defendant contends that plaintiff did not plead sufficient facts to sustain special damages. As hereinbefore indicated, the declaration was sufficient, and it was alleged therein that defendant "unlawfully, maliciously, and intentionally placed a heavy hasp, a heavy staple and a heavy padlock on and across each of the only two doors by which plaintiff and her family could gain legal entrance to said apartment." This averment, if proved, is sufficient to sustain an award of special damages. The verdict should not have been set aside on that ground.

It is contended by plaintiff that the verdict is excessive. Inasmuch as the judgment must be reversed and the case remanded for a new trial, we refrain from expressing an opinion on that question.

As we view it, the controlling question in this case is embodied in the fifth assignment of error. In the circumstances disclosed by this record, was there actually a verdict? The jury answered only one of the interrogatories, in which they found exemplary damages in the sum of one thousand dollars, and without retiring to their room a purported general verdict was written and signed by the foreman of the jury. We entertain grave doubt whether there was, in fact, any verdict returned by the jury in this case. But waiving that question for the moment, there is a fatal defect in the verdict.

The finding actually made by the jury embraced only punitive damages. No compensatory damages were found. There was a straight line drawn in the blank where the amount of compensatory damages, if any, should have been inserted by the jury. This could be construed as a finding of the jury that no compensatory damages were due plaintiff. But regardless of whether the jury answered the interrogatory with reference to compensatory damages, clearly their finding only embraced damages of an exemplary or punitive character. A plaintiff cannot maintain an action merely to recover punitive or exemplary damages. He cannot maintain an action merely for the infliction of punishment. A finding of compensatory damages is a necessary predicate for an award of punitive damages. *Newman* v. *Robson & Prichard,* 86 W. Va. 681, 104 S. E. 127; 1 Sedgwick on Damages, Ninth Ed. 708; 2 Sutherland on Damages, 4th Ed., Section 406; 33 A. L. R., page 285, note; 81 A. L. R., page 913, note; 25 C. J. S., Damages, Section 118. In the case at bar the entire award of the jury, as above stated, was for punitive damages, and, not being supported by a finding of compensatory damages, such finding was not a sufficient basis for a general verdict.

Moreover, where there is a legal finding of compensatory damages, punitive damages, if awarded, must bear a reasonable proportion to the compensatory damages so found. In the absence of an award of compensatory damages, an award of punitive damages may be taken as an indication that the jury was actuated by passion, prejudice and improper motives in making such finding. *Hess* v. *Marinari,* 81 W. Va. 500, 94 S. E. 968. See *Pendleton* v. *Railway Co.,* 82 W. Va. 270, 95 S. E. 941. A jury is not permitted to allow more than will justly compensate a plaintiff, unless it is shown that defendant was actuated by evil motives, or that the acts complained of were done with reckless indifference to the rights of plaintiff, or there was wanton and wilful neglect of duty causing the loss. The evidence tends to show that there was a wanton and reckless disregard of the

rights of plaintiff by defendant, but the jury cannot punish defendant for his conduct without ascertaining an amount necessary to compensate plaintiff for actual damages.

One of the two duly propounded and vital interrogatories only having been answered by the jury, the rule laid down in the second point of the syllabus of *Griffith* v. *American Coal Co.*, 78 W .Va. 34, 88 S. E. 595, is inapplicable. It was therefore error to overrule the motion to set aside the verdict which was erroneously received by the trial court.

For the reasons stated, we reverse the judgment of the Circuit Court of Wyoming County, set aside the verdict, and award defendant a new trial.

> *Judgment reversed; verdict set aside; new trial awarded.*

KENNA, PRESIDENT, concurring:

I agree with the Court's conclusion but I cannot agree that a verdict was returned by the jury and would set the judgment of the Circuit Court of Wyoming County aside because there is no verdict upon which it can rest.

When the jury returned into court after deliberating, upon being asked if it had agreed upon a verdict, it answered in the affirmative. Thereupon there was exhibited to the court in writing the two special interrogatories, the first asking the amount of compensatory damages included in the verdict and the second the amount of punitive damages so included. With symbols and numerals the jury indicated that it had found $1,000.00 in exemplary damages for the plaintiff. There was no finding of compensatory damages and no general verdict. Of course it goes without saying that special interrogatories of this nature are for the purpose of analyzing a general verdict as between compensatory and exemplary damages. Here there was no general verdict. Consequently there was nothing upon which to base an answer to the special interrogatories. Hence the jury reported nothing

and should have been sent back to its room for further deliberation and further instructed, if necessary. Of course a trial judge can correct a formal mistake in a verdict but his power to correct is strictly confined to mere matters of form. Instead of confining the procedure to a formal correction here, the verdict for plaintiff was written in open court by counsel for the plaintiff and signed by the foreman pursuant to the court's direction. It was then read to and agreed to by the jury, changing its conclusion from $1,000.00 exemplary damages to a $1,000.00 general verdict, without answering either special interrogatory. In my opinion this was tantamount to having the jury arrive at a verdict in open court without discussion or deliberation. It is my opinion that the judgments in this case had no verdict upon which to stand and I would so treat it.