IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 21-0169

_____

FILED
November 16, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. WEST VIRGINIA MUTUAL
INSURANCE COMPANY,
Petitioner

v.

THE HONORABLE JUDGE TERA SALANGO, JUDGE OF THE
CIRCUIT COURT OF KANAWHA COUNTY,
AND MICHAEL COVELLI, M.D.,
Respondents

_____

WRIT GRANTED
_____

Submitted:  October 6, 2021
Filed:  November 16, 2021

Michael J. Farrell, Esq.
J. Ben Shepard, Esq.
Farrell, White & Legg PLLC
Huntington, West Virginia
Counsel for Petitioner

Scott H. Kaminski, Esq.
Ray, Winton & Kelley, PLLC
Charleston, West Virginia
Counsel for Respondent Covelli

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 189, 451 S.E.2d 755 (1994).

i

3.      "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus Point 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

4.      "In order for an insured or an assignee of an insured to recover the amount in excess of policy limits from an insurer pursuant to this Court's decision in *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W. Va. 585, 396 S.E.2d 766 (1990), the insured must be actually exposed to personal liability in excess of policy limits at the time the excess verdict is rendered." Syllabus Point 9, *Strahin v. Sullivan*, 220 W. Va. 329, 647 S.E.2d 765 (2007).

5.      "In a proceeding governed by the Rules of Civil Procedure, a judgment rendered in such proceeding is not final and effective until entered by the clerk in the civil docket as provided in Rule 58 and Rule 79(a) of the Rules of Civil Procedure." Syllabus Point 4, *State v. Mason*, 157 W. Va. 923, 205 S.E.2d 819 (1974).

WALKER, Justice:

A jury awarded Dominique Adkins $5,788,977 on her medical malpractice claim against Michael Covelli, M.D.—well above the limits of his medical malpractice insurance. But Dr. Covelli's insurer, West Virginia Mutual Insurance Company (Mutual), settled Ms. Adkins's suit within policy limits before the circuit court reduced the verdict to judgment. After observing publicity of Ms. Adkins's large jury award, a second patient sued Dr. Covelli for malpractice. Mutual settled that claim within policy limits, too. Dr. Covelli then sued Mutual for common law bad faith under *Shamblin v. Nationwide Mutual Insurance Company*.[1] After the circuit court denied Mutual's motion for summary judgment on Dr. Covelli's claims, Mutual petitioned this Court for extraordinary relief from the circuit court's order.

Mutual has demonstrated that the writ of prohibition it seeks is appropriate under the third factor of *State ex rel. Hoover v. Berger*.[2] A critical element of a *Shamblin* "excess judgment"[3] claim—personal liability in excess of policy limits—is indisputably

---

[1] 183 W. Va. 585, 396 S.E.2d 766 (1990).

[2] 199 W. Va. 12, 483 S.E.2d 12 (1996).

[3] There are two types of first party bad faith actions, a "loss claim" theory and an "excess judgment" theory. *See State ex rel. Brison v. Kaufman*, 213 W. Va. 624, 634, 584 S.E.2d 480, 490 (2003) (Davis, J. Concurring).

missing in this case; Dr. Covelli faces no personal liability on either patient's medical malpractice claims. And, the circuit court erroneously disregarded *State ex rel. State Auto Property Insurance Companies v. Stucky*[4] and allowed Dr. Covelli's claims under the Unfair Trade Practices Act (UTPA)[5] to proceed. For those reasons, we grant the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ms. Adkins sued Dr. Covelli for medical malpractice that occurred while THS Physician Partners, Inc. (THS) employed Dr. Covelli. Mutual provided group insurance coverage to THS and covered Dr. Covelli for up to $2 million for each medical malpractice claim. Mutual hired defense counsel and authorized settlement of the claim for up to $150,000, but Ms. Adkins demanded a minimum of $300,000. The case went to trial after the parties failed to settle.

Dr. Covelli sent Mutual two letters before trial demanding that Mutual settle within the $2 million policy limit. But Mutual proceeded to trial, and the jury returned a verdict of almost $5.8 million against Dr. Covelli. Local newspapers, the *Charleston Gazette* and *West Virginia Record*, published articles that mentioned the verdict amount.

---

[4] 239 W. Va. 729, 806 S.E.2d 160 (2017).

[5] *See* W. Va. Code §§ 33-11-1 to 10 (1974).

2

Mutual settled for $950,000 several weeks after the verdict but before the circuit court entered the judgment order.

Shelby Pomeroy, another former patient of Dr. Covelli during his time with THS, learned about the verdict from the publicity, retained Ms. Adkins's trial counsel, and sued Dr. Covelli for medical malpractice. Mutual received Ms. Pomeroy's notice of claim on October 13, 2017, and Dr. Covelli sent Mutual two letters demanding that Mutual settle the suit within policy limits. Mutual received the first letter on November 14, 2017, and the second on January 5, 2018. Ms. Pomeroy filed suit on January 8, 2018, and Mutual settled for $300,000 just over one month later on February 21, 2018.

Although both suits were settled within policy limits, Dr. Covelli produced an expert report by a West Virginia University economics professor, Clifford Hawley, Ph.D., estimating that Mutual caused Dr. Covelli between approximately $1.2 and $1.5 million in actual damages by failing to settle the suits sooner. Dr. Covelli alleges that reporting the $1.25 million in total settlements to the National Practitioner's Data Bank and the adverse publicity from the jury verdict in Ms. Adkins's case caused the damages.

Dr. Covelli alleges, specifically, that part of the damages occurred when he withdrew a work application from Charleston Area Medical Center (CAMC) after CAMC learned of Ms. Pomeroy's then-pending claim. Mutual argues that Dr. Covelli withdrew

3

the application when CAMC learned he withheld the claim from his application. But Dr. Covelli insists that he forgot to report it. The circuit court found that it did not matter why Dr. Covelli withdrew the application, because "had [Mutual] settled the Adkins claim prior to the public verdict . . . there would have been no Pomeroy claim for Dr. Covelli to report to CAMC."

Dr. Covelli alleged two counts in his complaint against Mutual. In Count I, he asserted *Shamblin* common law bad faith claims for Mutual's alleged failure to settle both Ms. Adkins's and Ms. Pomeroy's suits. In Count II, he alleged that Mutual violated certain portions of the UTPA.[6] Dr. Covelli sought compensatory damages for, among other things, his alleged "net economic losses," annoyance, inconvenience, and emotional distress. He also requested punitive damages. Mutual filed its writ of prohibition after the circuit court denied its motion for summary judgment on both counts. Mutual argues that the circuit court clearly erred by permitting 1) Dr. Covelli's *Shamblin* claims when he had no excess judgment to recover, 2) Dr. Covelli to move forward under a bad faith theory since Mutual acted reasonably, and 3) Dr. Covelli's UTPA claims since *Stucky* clarified that he lacks standing under the provisions he alleged.

---

[6] Specifically, Dr. Covelli alleged violations of West Virginia Code §§ 33-11-4(9)(b)-(d) and (f).

4

## II. STANDARD OF REVIEW

When we take up a petition for a writ of prohibition, it is well settled that

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.[7]

"In determining the third factor, the existence of clear error as a matter of law, we will employ a *de novo* standard of review, as in matters in which purely legal issues are at issue."[8]

---

[7] Syl. Pt. 4, *State ex rel. Hoover*, 199 W. Va. 12, 483 S.E.2d 12.

[8] *State ex rel. Gessler v. Mazzone*, 212 W. Va. 368, 372, 572 S.E.2d 891, 895 (2002).

## III. ANALYSIS

Mutual's petition arises from the denial of a motion for summary judgment. We have previously found that prohibition may lie in the context of a denial of a motion for summary judgment

> to correct substantial, clear-cut legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.[9]

Likewise, we acknowledge that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."[10]  But "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."[11]  In observing the standard for a writ of prohibition in conjunction with that of summary judgment, we

---

[9] *See State ex rel. Frazier v. Hrko*, 203 W. Va. 652, 657, 510 S.E.2d 486, 491 (1998) (quoting Syl. Pt. 1, in part, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979*), superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014)).

[10] Syl. Pt. 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co. of N. Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963).

[11] Syl. Pt. 4, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

find that no factual inquiry is necessary to answer either question germane to our determination of whether a writ of prohibition is appropriate in this case. It may be resolved on two legal inquiries: whether a *Shamblin* claim exists when a plaintiff has no personal liability for an excess judgment and whether an insured has standing to sue for violations of sections 33-11-4(9)(b)-(d) and (f) of the UTPA.[12]

## A. *Existence of a Shamblin Claim Without an Excess Judgment to Recover*

*Shamblin* presented an issue of first impression in West Virginia, and this Court used the case to establish the "standard of proof . . . applicable in future actions against insurers by their insureds for failure to settle . . . claims against them within policy limits."[13]

In *Shamblin*, Nationwide Insurance insured Shamblin's business vehicles.[14] Employees of Shamblin, driving cars insured under the Nationwide policy, were involved in a traffic collision, severely injuring the plaintiff in the underlying action.[15] In the

---

[12] Because we conclude that the writ of prohibition rightfully issues on these two bases, we need not address the reasonableness of Mutual's conduct.

[13] *Shamblin*, 183 W. Va. at 594, 396 S.E.2d at 775.

[14] *Id.* at 588, 396 S.E.2d at 769.

[15] *Id.*

underlying litigation, the plaintiff offered to settle for the insured's policy limit, but Nationwide rejected the offer and proceeded to trial.[16] A jury returned a verdict approximately $600,000 over the insured's policy limit.[17] The circuit court entered the judgment order on the verdict, which exposed the insured to personal liability.[18] The insured sued Nationwide for bad faith refusal to settle, among other things.[19] The insured prevailed at trial, and this Court affirmed a jury award of $1 million in compensatory damages.[20]

But *Shamblin* only contemplated a cause of action based on recovery of an insured's excess personal liability. This Court stated that when an insurer rejects a settlement offer, "it subject[s] itself to liability for the excess damages incurred by its insured."[21] Likewise, we held that "in assessing whether an insurer is liable to its insured

---

[16] *Id.* at 589, 183 S.E.2d at 770.

[17] *Id.* at 590, 183 S.E.2d at 771.

[18] *See id.*

[19] *Id*.

[20] *Id.* at 596, 183 S.E.2d at 777.

[21] *Id.*

*for personal liability in excess of policy limits*, the proper test to be applied is whether the reasonably prudent insurer would have refused to settle within policy limits . . . ."[22]

*Shamblin* defined a cause of action designed for a plaintiff to recover the specific amount of personal liability not covered by their insurance.[23] We have recognized that plaintiffs may recover damages exceeding their personal liability under a *Shamblin* theory provided those damages are incidental to the personal liability for an excess judgment.[24] Put differently, there must be personal liability for an excess judgment before a plaintiff can recover related damages, because "to recover under *Shamblin* . . . the insured's personal assets must be at risk."[25] Likewise, plaintiffs can sometimes recover punitive damages in *Shamblin* actions, but "[a] finding of compensatory damages by a jury is an indispensable predicate to a finding of exemplary or punitive damages . . . ." Syl. Pt. 3, in part, *Toler v. Cassinelli*, 129 W. Va. 591, 41 S.E.2d 672 (1946). So, we have clearly

---

[22] Syl. Pt. 4, in part, *id.* at 585, 396 S.E.2d at 766 (emphasis added).

[23] *See, e.g. Marshall v. Saseen*, 192 W. Va. 94, 100-01, 450 S.E.2d 791, 797-98 (1994) (requiring separate trial for plaintiff to "seek to recover the excess award" of $76,711.80).

[24] *See, e.g. Shamblin*, 183 W. Va. at 596, 183 S.E.2d at 777 (affirming $1 million in compensatory damages when a jury verdict exposed the plaintiff to $597,500 in personal liability).

[25] *Strahin v. Sullivan*, 220 W. Va. 329, 335, 647 S.E.2d, 765, 771 (2007).

established that personal liability for an excess judgment is an essential element of a *Shamblin* claim.

In this instance, Dr. Covelli alleged *Shamblin* claims related to Mutual's defense of Ms. Adkins's and Ms. Pomeroy's suits. The *Shamblin* claim for Mutual's alleged failure to settle Ms. Pomeroy's suit plainly lacks merit because Mutual settled her claim within policy limits before trial, unlike the insured in *Shamblin* who sued after Nationwide refused to settle before trial. The circuit court did not address the claim in its order, but it clearly erred by allowing it to proceed.

On the other hand, Mutual's handling of Ms. Adkins's suit conceivably supports a *Shamblin* action since a jury rendered a verdict over Dr. Covelli's policy limit. But the parties settled within policy limits before the circuit court entered the judgment order. So, Dr. Covelli never had any personal liability for an excess judgment, because "[t]he notation of a judgment in the civil dockets as provided by Rule 79(a) constitutes the entry of the judgment; and the judgment is not effective before such entry. . . ."[26]

Dr. Covelli cites no case where a plaintiff alleged a *Shamblin* action predicated on anything other than recovery of personal liability. Rather, Dr. Covelli

---

[26] W. Va. R. Civ. P. 58.

10

impliedly asks the Court to, as Mutual describes, adopt "a new species of tort liability never before recognized under the laws of West Virginia—or that of any other jurisdiction" by permitting recovery for fear of personal liability or harm caused by adverse publicity.

Dr. Covelli and Mutual each cite *Strahin*[27] to support their respective positions on permitted recovery under *Shamblin*. Central to their dispute is our holding in Syllabus Point 9 of *Strahin*, which provides that

> [i]n order for an insured or an assignee of an insured to recover the amount in excess of policy limits from an insurer pursuant to this Court's decision in *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W. Va. 585, 396 S.E.2d 766 (1990), the insured must be actually exposed to personal liability in excess of policy limits at the time the excess verdict is rendered.[28]

The circuit court found that "*Strahin* does not carry the day for [Mutual]." Like Dr. Covelli, the circuit court focused on the syllabus point's conclusion that "the insured must be actually exposed . . . at the time the excess verdict is rendered." It reasoned that since the jury rendered a verdict in excess of policy limits, Dr. Covelli can seek damages for the possible personal liability and adverse publicity. But the language supports this proposition only when removed from the context of the entire syllabus point.

---

[27] 220 W. Va. 329, 647 S.E.2d 765.

[28] Syl. Pt. 9, *id.*

11

Like our holding in *Shamblin*, *Strahin* defines an insureds' right to "recover the amount in excess of policy limits[,]" not "net economic losses" independent of personal liability for an excess judgment. So, again, even though a jury returned a verdict exceeding Dr. Covelli's policy limits, he has no amount in excess of policy limits to recover, because "[i]n a proceeding governed by the Rules of Civil Procedure, a judgment rendered in such proceeding is not final and effective until entered by the clerk in the civil docket as provided in Rule 58 and Rule 79(a) of the Rules of Civil Procedure."[29]

In sum, when a plaintiff has no excess judgment to recover, no *Shamblin* cause of action exists. And for that reason, no genuine issue of material fact exists in this case since Dr. Covelli failed to allege an essential element of the claim, and we need not address whether Mutual acted in good faith since Dr. Covelli never established a *Shamblin* claim. So, the circuit court clearly erred by denying Mutual's motion for summary judgment on this count.

**B. *Dr. Covelli's Standing to Assert Claims Under the UTPA Subsections***

Mutual also argues that Dr. Covelli lacks standing to assert the UTPA claims. Here are the relevant UTPA provisions:

---

[29] Syl. Pt. 4, *State v. Mason*, 157 W. Va. 923, 205 S.E.2d 819 (1974).

12

(9) **Unfair claim settlement practices**. — No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

. . . .

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information; [and]

. . . .

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[.][30]

In *Stucky*, we examined two of these provisions, (b) and (f), in the context of a standing challenge.[31] In that case, homeowners sued a construction company called CMD and the persons who hired CMD to build a home.[32] The homeowners alleged that earth movement caused by construction of the new home damaged their home located

---

[30] W. Va. Code §§ 33-11-4(9)(b)-(d) and (f).

[31] *Stucky*, 239 W. Va. at 734-36, 806 S.E.2d at 165-67.

[32] *Id.* at 730, 806 S.E.2d at 161.

downhill from the construction site.[33] CMD impleaded its insurance company, State Auto, and claimed that by delaying settlement, State Auto violated West Virginia Code §§ 33-11-4(9)(b), (f), and (g).[34] But we held that "subsections (9)(b) and (9)(f) are designed to protect plaintiffs who seek liability-related damages from an insured, and are not designed to protect the insured."[35] In doing so, we emphasized that "claim" as used in those subsections means the demand upon the insured for damages resulting from the insured's act or omission.[36] For that reason, we concluded the insured, CMD, lacked standing to assert a claim under subsections (9)(b) and (9)(f).[37]

Despite *Stucky*'s conclusion that the defendant insured under a liability policy had no standing to assert a claim under 9(b) and 9(f), the circuit court denied Mutual's motion for summary judgment of Dr. Covelli's claims for those subsections. The circuit court reasoned "[t]here is a serious question as to the *Stucky* decision's precedential value" since the Court failed to capture its holding in a syllabus point. The circuit court also found that *Stucky* did not address insureds' standing under subsections (c) and (d), so

---

[33] *Id.*

[34] *Id.* at 731, 806 S.E.2d at 162.

[35] *Id.* at 735, 806 S.E.2d at 166

[36] *Id.*

[37] *Id.* at 736, 806 S.E.2d at 167.

14

it would not preclude Dr. Covelli's standing for his claims under those subsections even if it does for subsections (b) and (f).

Examining each of the circuit court's conclusions in turn, we agree with Mutual that the circuit court clearly erred in disregarding *Stucky*. The circuit court did not cite any authority conflicting with *Stucky*, but rather appears to have simply ignored it as lacking any precedential value whatsoever. We need not belabor the point that a majority opinion is binding precedent with or without a syllabus point.[38] But, insofar as the circuit court supported its decision with the *Stucky* dissent's criticism of the majority for "implicitly alter[ing] the law without even enunciating a new a new syllabus point[,]" we observe that the dissent made the statement in opposition to the plaintiff's common law bad faith claims.[39] The *Stucky* dissent never mentioned the majority's holding with regard

---

[38] *See* Syl. Pt. 2, *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014) ("Signed opinions that do not contain original syllabus point also carry significant, instructive, precedential weight because such opinions apply settled principles of law in different factual and procedural scenarios than those addressed in original syllabus point cases."); *see also* Syl. Pt. 3, *id.* ("Signed opinions, both those including new syllabus points and those not containing new syllabus points, are published opinions of the Court. As such, they should be the primary sources relied upon in the development of the common law.").

[39] *Stucky*, 239 W. Va. at 739, 806 S.E. 2d at 170 (Workman, J., dissenting).

15

to UTPA standing.[40]  So, the circuit court's refusal to acknowledge the precedential value of *Stucky* was error, and its reliance on the dissent in that case was misplaced.

We now apply *Stucky* and find the circuit court clearly erred by finding a genuine issue of material fact since a defendant insured under a liability policy "has no standing to assert a claim under subsection (9)(b) or subsection (9)(f)."[41]  As we discussed in *Stucky*, insureds under a liability policy lack standing under subsections (b) and (f), because "the term 'claim' is used 'in its common (and common sense) usage: an effort by a third party to recover money from the insured.'"[42]

While the Court in *Stucky* did not have reason to address subsections (c) and (d), we find that defendants insured under liability policies likewise lack standing to pursue claims under those provisions for the same reason.  Subsection (c) refers to the failure "to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies" and subsection (d) refers to the "refus[al] to pay claims without conducting a reasonable investigation based upon all available information[.]"  The

---

[40]  *Id.* at 737-41, 806 S.E. 2d at 168-72.

[41]  *Stucky*, 239 W. Va. at 736, 806 S.E. 2d at 167.

[42]  *Id.* at 735, 806 S.E. 2d at 166 (citing *Evanston Ins. Co. v. Sec. Assurance Co.*, 715 F.Supp. 1405, 1412 (N.D. Ill. 1989) (citation omitted)).

common thread through sections (b), (c), (d), and (f) is that they do not create duties for liability insurers toward their insureds. Having already determined in *Stucky* that defendants insured under liability policies lack standing to pursue claims under (b) and (f) based on the definition of "claims," it is no stretch to conclude that insureds similarly lack standing to pursue claims against a liability insurer under (c) and (d) because "[w]ords and clauses should be given a meaning which harmonizes with the subject matter and the general purpose of the statute[.]"[43] Since Dr. Covelli lacked standing for his UTPA claims, the circuit court clearly erred by denying Mutual's motion for summary judgment on this count.[44]

---

[43] Syl. Pt. 1, in part, *State ex rel. Holbert v. Robinson*, 134 W. Va. 524, 59 S.E.2d 884 (1950).

[44] The circuit court also found that a genuine issue of material fact exists as to whether Mutual violated West Virginia Code of State Rules § 114-14-3, which states that an "insurer's claim files shall be subject to examination by the Commissioner" and defines an insurer's duties in documenting a claim file. We readily dispose of that contention. First, Dr. Covelli did not plead a violation of the regulation; the issue arose after one of Dr. Covelli's experts opined that Mutual improperly documented one of the claims against Dr. Covelli. The expert did not state the regulation that Mutual allegedly violated, but the circuit court included § 114-14-3 in its order and concluded that it was the rule the expert referred to. And second, "a violation of an insurance regulation standing alone does not give rise to a cause of action under West Virginia Code § 33-11-4(9)." *Russell v. Amerisure Ins. Co.*, 189 W. Va. 594, 433 S.E.2d 532 (1993). Regardless, Dr. Covelli lacks standing for his claims under § 33-11-4(9) of the UTPA.

A writ of prohibition is appropriate in this case, because the circuit court clearly erred in denying Mutual's motion to dismiss both Count I and Count II of the complaint, and if we do not correct the error, and a jury were to find in Dr. Covelli's favor on these counts, the parties will have endured a costly and complex trial only to have it reversed as a matter of law.[45]

## IV. CONCLUSION

For the above reasons, we grant Mutual's petition for a writ of prohibition as to the circuit court's January 26, 2021 order denying summary judgment. We direct the circuit court to grant Mutual's motion and enter judgment for Mutual on Counts I and II.

Writ Granted.

---

[45] *See State ex rel. Weirton Med. Ctr. v. Mazzone*, 213 W. Va. 750, 754, 584 S.E.2d 606, 610 (2003).