TERRANCE L. SPEICHER, *et al.*

*v.*

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *a Corporation*

(No. 12534)

Submitted September 27, 1966. Decided December 13, 1966.

*Furbee, Hardesty, Critchfield & Whyte, Russell L. Furbee, Farmer & Farmer, George R. Farmer, Jr.,* for appellant.

*Kenneth E. Kincaid, Mike Magro, Jr.,* for appellees.

BROWNING, JUDGE:

This case is here upon appeal from the final judgment of the Circuit Court of Monongalia County in which judgment was entered upon a verdict for the plaintiffs, father and son, in the sum of $6,000.00. The action resulted from a prior action in that court in which David Lee Morgan was plaintiff and the Speichers were defendants and arose out of an automobile accident in a small Pennsylvania town near the West Virginia state line and in which case Morgan got a judgment against both Speichers in the sum of $16,-000.00. The elder Speicher owned the motor vehicle in question and had a policy of liability insurance with State Farm Mutual Automobile Insurance Company with a maximum coverage of $10,000.00. It will be noted that the Morgan verdict was $6,000.00 in excess of the insurance coverage and the present action was for recovery of the excess beyond what Morgan was paid under the policy by the insurance company. The action by the Speichers against the insurance company, and the former and latter will sometimes hereinafter be referred to in the position they had in the trial court, plaintiffs and defendant, was predicated upon the theory that the defendant exercised ''bad faith'' in not making a settlement with Morgan prior to the trial of the original case. This is one of the provisions of the contract of insurance between plaintiffs and defendant: '' . . . to defend any suit against the insured alleging such bodily injury . . . and seeking damages on account thereof . . . but the company may make such investigation, negotiation and settlement of any claim or suit as it *deems expedient. . . .*'' (Italics supplied.)

The defendant cites several alleged prejudicial errors which occurred during the trial but this Court

finds it necessary to consider only one, believing that a decision upon that one renders a discussion of the others unnecessary. The principal issue presented upon this appeal is one of first impression in this jurisdiction, although there are many cases elsewhere and, apparently, they fall into two groups—one referred to as the "bad faith" rule and the other the "negligence" rule. Since it is the opinion of this Court, upon the evidence of this case, as a matter of law, that the defendant was guilty of neither negligence nor bad faith, it will not be necessary for the Court to adopt either of those rules or to go into detail in this opinion in attempting to distinguish between them. An examination of the cases from other jurisdictions propounding one or the other of these rules evidences what is always true and that is that each decision depends upon the facts in the particular case. It is evident that in some of the cases which follow the negligence rule that the evidence is such as to show gross negligence that would in other jurisdictions be held to be bad faith. Some courts also apparently merge the two doctrines until it is impossible to determine to which they adhere. Inasmuch as this is a question of first impression in this jurisdiction and even though cases from other jurisdictions are persuasive only upon this Court, we believe it advisable to list the cases cited by counsel for defendants which are alleged to fall under the "bad faith" rule and the cases cited by the plaintiff alleged to fall within the "negligence" rule. Cases cited by counsel for defendants alleged to fall under the "bad faith" rule are: *Brown v. Guarantee Ins. Co.*, 155 Cal. App. 2d 679, 319 P. 2d 69; *Olympia Fields Country Club v. Bankers Indemnity Ins. Co.*, 325 Ill. App. 649, 60 N. E. 2d 896; *Henke v. Iowa Home Mutual Cas. Co.* (Iowa, 1959), 97 N. W. 2d 168; *Ferris v. Employers Mutual Cas. Co.* (Iowa, 1963), 122 N. W. 2d 263; *Lemons v. State Auto Ins. Co.*, 171 F. Supp. 92; *Am. Surety Co. of N. Y. v. Schneider & Son* (Ky., 1957), 307 S. W. 2d 192; *Brown v. U. S. F. & G. Co.*, 314 F. 2d 675; *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St.

148, 187 N. E. 2d 45; *Perry v. U. S. F. & G. Co.*, 49 Tenn. App. 662, 359 S. W. 2d 1; *Byrnes v. Phoenix Assur. Co. of N. Y.*, 303 F. 2d 649; *Cowden v. Aetna Cas. Co.*, 389 Pa. 459, 134 A. 2d 223; *Murach v. Mass. Bonding and Ins. Co.* (Mass., 1959), 158 N. E. 2d 338; *Aetna Cas. & Sur. Co. v. Price*, 206 Va. 749, 146 S. E. 2d 220. Cases cited by counsel for the plaintiff alleged to fall under the "negligence" rule are: *Anderson, Trustee, etc. v. St. Paul Mercury Indemnity Co., et al.*, 340 F. 2d 406; *Dumas v. Hartford Accident and Indemnity Co.*, 94 N. H. 484, 56 A. 2d 57; *Alabama Farm Bureau Cas. Ins. Co. v. Dalrymple* (Ala., 1959), 116 So. 2d 924; *Hartford Accident & Ind. Co. v. Cosby* (Ala., 1965), 173 So. 2d 585; *Chancery v. New Amsterdam Cas. Co.*, 336 S. W. 2d 763. "The cases from other jurisdictions involving actions for damages by persons injured from falls on terrazzo surfaces are in conflict. However, to place so many in one category and so many in another would not be quite accurate, for the facts must be carefully looked to in each case in ascertaining the reason for the decision of the Court." *Costello v. City of Wheeling*, 145 W. Va. 455, 460, 117 S. E. 2d 513, 516, and cases cited in the opinion of that case.

It is obvious that if this opinion is to serve its purpose it will be necessary to state at some length the facts leading up to the trial of the original action against the Speichers and as they existed prior to that time. Almost immediately after the accident occurred the defendant referred the matter to Angelo DeCarlo, an experienced adjuster of the insurance company, who holds a law degree from West Virginia University. He, assisted by representatives of the defendant stationed in Pennsylvania, went to the scene of the accident and there and elsewhere made what I believe is not denied to be an extensive investigation to determine whether the Speichers were liable. The following are some of the facts and evidence revealed by Mr. DeCarlo's investigation. On November 1, 1962, Terrance L. Speich-

er, the son, who was driving the automobile at the time of the injury to Morgan, stated in part that he "was traveling about 20 miles per hour as I neared the church. When I was about 10 feet from the church steps, I saw a boy named Martin Richards and he was running toward the edge of the road near the side of the steps. I didn't know what Richards was going to do, so I swung to my left a little and also applied my foot brake and as I looked straight ahead I saw David Morgan about 3 feet in front of my car and he was at about the middle of hood. That is the very first time I saw him. He was struck with the left front of the car and I went about 10 feet before I stopped in the road and let the car set there until the State Police arrived. . . . I was not cited by the police for any violation. I did not have anything to drink prior to the accident. . . . I have read the above three pages and they are correct.'' The signature of Terrance Lynn Speicher is at the bottom of that statement. Martin Richards, age 13 and a resident of Dunkard, Pennsylvania, where the accident occurred, and to whom reference was made by young Speicher, in his affidavit, said: "David Morgan and I were together and were returning to the Jack residence and I was on the sidewalk steps and David Morgan jumped from the embankment into the road and when I saw the car coming I grabbed a railing and stopped and turned around to see where David was and when I couldn't see him I looked back on the road and seen David laying on the drivers side of the road. . . . The car driven by Terry W. Speicher did not appear to be traveling too fast.'' This statement was witnessed by Mrs. Martin Richards. Neil Phillips, age 23, also of Dunkard, Pennsylvania, stated that he was standing on his front porch and observed young Speicher driving by in "his 1954 Buick at a speed of approx. 25 m p h. I live approx. 25 yards west of the Methodist Church, . . . .'' (The accident occurred near the Methodist Church of Dunkard.) Wilma K. Pierce, age 15, of Dunkard, stated that she was a passenger in young Speicher's car, sitting in

the center of the front seat between Speicher and Rosalie Lindsay, age 16, also a resident of Dunkard, at the time of the accident. She said: "Terry was driving east on Main St. at approx. 30-35 m p h and traveling upgrade on this 2 lane asphalt *straight* and traveled approx. 100 feet when we seen Martin Richards run down the embankment on our right and he stopped. I never did see David Morgan, but I heard a thump and Terry stopped the car and we found out David Morgan was hit. . . . The Pennsylvania State Police investigated the accident and Terry was not cited." This statement is signed by Wilma K. Pierce. Rosalie Lindsay stated that she was in the front seat of the Speicher car when Morgan was struck and that while they were driving east on Main Street in Dunkard "at approx. 25-30 m p h and was near the Methodist Church steps when I noticed Martin Richards traveling very quickly down these steps and also noticed him grabbing the hand rail to stop. Terry pulled his car to the left in an effort to avoid Martin in case he didn't stop and also applied the brakes when we heard a thumping noise and seen David Morgan at the same time. Where David came from I'll never know." The plaintiff in the original action, David Morgan, stated in part on October 24, 1962, that on the night of the accident he was at the Methodist Church preparing for a festival and that "Mrs. Jacks asked me to go across the street from the church to get a bench at her house. Martin Richards was with me and he was going across the street also. It was a clear night and the blacktop street in front of the church was dry. As I came out of the church I had that bench on my mind and I must have started to cross the street and was hit by a car driven by Terry Speicher of Maidsville, W. Va. . . . I don't remember much about the accident. I just remember walking out of the church and ending up in the hospital. I did not see any car lights coming. I do not remember any horn blowing before I was hit. . . . I do not know where in the road I was hit. I really don't remember anything about the accident."

It is not denied that Angelo DeCarlo made at least eight attempts to settle this claim with counsel for Morgan in the original action without success. He made an offer of $3,000.00, which represented approximately the medical and hospital expenses of the Morgan boy, and on the first or second day of the trial he raised the offer to $4,000.00 according to counsel for Morgan at that time. DeCarlo denied the four thousand dollar offer as a witness in the present case. At the trial of this action the elder Speicher testified that he did not employ counsel to represent him or his son and was asked these questions and made the following answers: "Q. Who did represent you and your son as defendants? A. Mr. Hopkins. Q. Do you know who employed him? A. As far as I know, he was the lawyer for the insurance company." Upon cross-examination he was asked if he did not know that his son had absolved himself from negligence and liability in the statement which he made relative to the accident and answered: "Not necessarily." He admitted that it was his information that his son was traveling on the right side of the road and that the speed of his car "was twenty miles an hour". There is a conflict between his testimony and that of Mr. Oakley Hopkins, who was counsel for the insurance company prior to the original action, and who was a veteran insurance attorney of the City of Morgantown, as to whether Hopkins had told Speicher that if he desired he could employ an attorney to represent him in addition to the representation he would get without cost from Hopkins. There is no conflict in the testimony that after the verdict the Speichers declined to attempt to appeal the case to this Court although they consulted with Mr. Herschel Rose, a well known member of the Marion County Bar of Fairmont, West Virginia. Even after such consultation they declined to take any further action in the case. To revert to the senior Speicher's testimony at the trial, he denied that he contended to Mr. Hopkins that his son was not liable, again in contradiction to Hopkins' testimony, and in answer to a question said:

"Yes, we said that the boy wasn't liable for the fact that the insurance company, and the policy, always states to never accept liability or responsibility." There was no such provision in the policy as far as this record shows. Although this witness quoted his son as saying he was on the wrong side of the road and that that would make him liable, when confronted on cross-examination with the son's statement and asked if he hadn't stated the contrary therein, the witness's answer was "Yes, sir." Young Speicher was asked on cross-examination if he and his father had not met with Mr. Oakley Hopkins to discuss the question of appealing the judgment against them and admitted that such had happened, that his father was present, and in answer to this question made the following answer: "Q. At that time, you and your father both felt that the verdict was wrong, didn't you? A. Yes, sir." He was asked if he and his father didn't go to Fairmont to consult with Mr. Herschel Rose with reference to the case and admitted that they did. He was asked this question and made this answer: "Q. At that time you and your father told Mr. Rose that the verdict was wrong and should be set aside, didn't you? A. Yes, sir." He was asked this further question and made the following answer: "Q. In other words, at that time you still contended that you were not guilty of any negligence, that's correct, isn't it? A. My insurance policy said never accept negligence." There is no evidence in the record that the insurance policy contained any language to that effect. Both Speichers admitted that they never did at any time ask Mr. Hopkins to negotiate a settlement within the policy limits.

Angelo DeCarlo also testified as a witness for the plaintiffs in this case and did not deny that he wrote a letter to his company under date of September 29, 1963, with reference to the case in which he stated "It is too much to hope for to get a verdict." He admitted that in a letter to his company dated September 25, 1963, he stated "We may get hit." He was asked these

questions and made these answers: "Q. Now is it also true that you said in your communique of September 25, 1963, 'We may get hit.'? A. Yes, I said that I stuck by my original evaluation and I realized we might get hit because of the severe injuries. Q. What did you mean by that expression? A. I felt if Mr. David Morgan got a verdict it would probably be a sympathetic verdict, and that's what I had reference to when I said, 'We may get hit.' Q. Did you not mean by that, that it might be a very large verdict? A. Yes." These further questions were asked DeCarlo and he made these answers: "Q. In other words, you were recommending that your company pay the amount of the medical bills and no more? A. That's right—only on a nuisance basis. Q. And you felt that that's all this case was worth? A. That's right because I could see no liability on the part of Terry Speicher." This witness went into detail in explaining the procedure followed in investigating cases for his company, that such was followed meticulously, including checking with the Pennsylvania Highway Patrol and being certain that the Speichers and other witnesses understood their statements before they signed them, etc. When asked about whether he attempted to settle the case he said that he had "consulted with Mr. Frame about eight times" in an attempt to settle the case. Counsel for Morgan confirmed the meetings with DeCarlo relative to settlement but stated that he never did discuss the matter with defendant's local counsel, Mr. Hopkins, for the reason that in his opinion Hopkins had no authority to settle claims for that company. Counsel for the defendant in this case cross-examined this witness at length upon the question of whether he ever discussed the question of *liability* with Mr. Hopkins even though he had no authority to settle the case, but his answers to those questions were somewhat ambiguous. Mr. Hopkins testified at the trial of this case and his testimony has substantially been covered heretofore, but he did say that he specifically discussed with the Speichers the fact that the $16,000.00 judgment

was $6,000.00 in excess of the liability coverage of their policy and these questions in that regard were asked him and he made the following answers: ''Q. Did they say anything about the payment of the Six Thousand Dollars ($6,000.00)? A. They just couldn't pay it, and weren't going to pay it, and it couldn't be collected from them so they weren't the least bit concerned about an appeal. Q. Did they tell you that? A. Yes, and why it couldn't be.'' Let me add at this point that the record shows the younger Speicher's wages had been attached and a small amount of money had been collected from him at the time of the trial of this case. However, according to this record, the elder Speicher was employed in Pennsylvania where the law does not permit the garnishment of workmen's wages to satisfy a judgement.

It is the view of this Court that the judgment in this case was not based upon the evidence and that there was no evidence to support a verdict for the plaintiffs under either a rule of negligence or bad faith. ''A jury verdict, approved by the trial court, which is against the clear weight and preponderance of the evidence will be set aside on appeal.'' Syl. Pt. 3, *Laxton v. Nat. Grange Mut. Ins. Co.*, 150 W. Va. 598, 148 S. E. 2d 725. The judgment of the Circuit Court of Monongalia County is reversed and the case is remanded to that court for a new trial.

*Reversed and remanded.*