396 S.E.2d 766

**Clarence SHAMBLIN, etc.**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, et al.**

**No. 19035.**

Supreme Court of Appeals of
West Virginia.

July 27, 1990.

John R. Fowler, Mary H. Sanders, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, for Nationwide Mut. Ins. Co.

Menis E. Ketchum, Larry A. Bailey, Greene, Ketchum, Bailey & Tweel, Huntington, for Clarence Shamblin.

WORKMAN, Justice:

This case is before the Court upon an appeal by Nationwide Mutual Insurance Company (hereinafter referred to as Nationwide) from a July 12, 1988 judgment order of the Kanawha County Circuit Court following a jury verdict in favor of the

plaintiff, Clarence Shamblin, and against the defendant, Nationwide (hereinafter frequently referred to as the bad faith case). This action was brought by Shamblin to recover an excess verdict rendered against him in a previous lawsuit as the result of Nationwide's refusal to settle a liability claim against Shamblin within his Nationwide liability insurance policy limits.[1] The verdict returned in favor of the appellee, Shamblin, granted him compensatory damages of $1,000,000.00, punitive damages of $1,500,000.00 and attorney's fees of $330,000.00.[2] The appellant assigns the following as errors committed at the trial below: 1) the trial court erred by allowing recovery of punitive damages; 2) the trial court erred by adopting negligence as the sole standard to determine whether a liability insurer has complied with its duty to its insured regarding the settlement of third-party claims; 3) the trial court erred by failing to grant summary judgment in favor of Nationwide and failing to direct a verdict in favor of Nationwide at the close of the plaintiff's case-in-chief; 4) the trial court erred by not allowing Nationwide to bring a third-party action; 5) the trial court erred by permitting the introduction of a page of Nationwide's claims manual as rebuttal evidence; 6) the trial court erred by failing to grant Nationwide's motion in limine on the appeal issue; and, 7) the trial court erred by continually interjecting itself into the trial with ponderous cross-examination and opinions as to witnesses. We find that error was committed on the issue of punitive damages; however, we find that the trial court committed no error with regard to the other assignments raised by the appellant. We therefore affirm in part and reverse in part.

This lawsuit arose out of an earlier cause of action involving an automobile accident which occurred on April 10, 1980 (hereinafter referred to as the Parker case or the underlying case). On that day, Edward Owens, an employee of Shamblin, was driving a truck, covered by Shamblin's Nationwide insurance policy, which was involved in an accident on the West Virginia Turnpike when it struck a vehicle driven by Delores Ann Parker. A truck owned by Buske Lines, Inc. was also involved in the collision, as were two other truck drivers employed by Shamblin who were driving different vehicles. These vehicles were also covered by Shamblin's Nationwide policy.

The accident occurred when two of the Shamblin drivers signaled to the third Shamblin driver that it was clear to pass another truck owned by Buske Lines, Inc. in a no-passing zone. In attempting to pass the Buske Lines truck, the Shamblin truck collided head-on with the vehicle driven by Parker. Parker sustained severe injuries, including permanent brain damage.

On January 20, 1980, Parker filed suit against Shamblin and Buske Lines, Inc. Parker retained Rod Jackson to represent her interests in this matter. In February 1980, Nationwide retained the law firm of Jackson and Kelly, specifically Steven Crislip, to represent its interests and Shamblin, on advice of Nationwide, retained the law firm of Goodwin and Goodwin to represent him personally.

From the origination of the Parker suit, there was a dispute between Parker and Nationwide with regard to the amount of coverage available to Shamblin for the accident. Counsel for Parker contended that the policy limits of $100,000.00 for each vehicle should be available since all three drivers were negligent, and therefore a total of $300,000.00 in Nationwide insurance coverage should be available to Shamblin. Nationwide, on the other hand, contended that the accident was a single occurrence, and therefore, only $100,000.00 in coverage

---

**1.** The policy is issued in the name of Clarence B. Shamblin d/b/a Shamblin's Mobile Cleaning. The policy will be referred to throughout as Shamblin's Nationwide policy.

**2.** The appellant does not allege any error with regard to the attorney fee award made by the court; therefore we do not address this issue. "Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived." Syl. Pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981).

was available regardless of the number of vehicles involved. Furthermore, Nationwide, according to the deposition taken of its claims attorney, R. L. Dougherty, who was assigned to the Parker case, believed that the Parker case damages were at least $500,000.00 even though the company contended that the policy coverage was only $100,000.00.

Rod Jackson testified at the trial of the bad faith case that by letter dated April 28, 1981, he offered to settle with Nationwide for the policy limits, whatever they were determined to be.[3] Nationwide claims that Jackson's demand was inexact and ambiguous, and that this "offer of settlement" was never conveyed to Nationwide by its attorney, Crislip. However, in Dougherty's deposition he testified that he "may have been" aware of Jackson's settlement offer, but would have insisted on a $100,000.00 policy limit. Nationwide, in Jackson's opinion, refused the settlement offer because they were unwilling to settle within the policy limits, whatever they might subsequently be determined to be.

On July 8, 1981, according to Crislip's testimony at trial, Nationwide conveyed to Jackson that it wanted to settle the Parker case, but Parker's attorney indicated to Crislip that he did not want to settle the case during 1981 for tax reasons. Then on January 4, 1982, Nationwide, through attorney Crislip, made an offer of judgment and paid $100,000.00 into court pursuant to Rule 68. *See* W.Va.R.Civ.P. 68.

Subsequently, in July 1982, a declaratory judgment action was filed by Shamblin in Kanawha County Circuit Court to determine exactly what the limits of Shamblin's Nationwide policy were. On October 21, 1982, Crislip wrote a letter to Nationwide in which he stated that if the coverage was greater than $100,000.00, Nationwide should settle the case within whatever limits were available.[4]

Jackson's testimony at the bad faith trial indicated that two to three weeks prior to the Parker trial, his client, Parker, offered to settle the case and release Shamblin in exchange for policy limits, whatever they were later judicially determined to be. Nationwide again refused this offer. The appellant's evidence, on the other hand, indicated that Crislip repeatedly asked Jackson to make a settlement demand and that Jackson never did make a specific demand. Jackson's testimony revealed that an offer was again made to Parker within a few days of trial, in which Shamblin would pay $30,000.00 out of his own pocket to be released from personal liability plus $100,000.00 coverage under the insurance policy. Jackson refused that offer, indicating that he would not abandon his position that the settlement should be for the full policy limits, whatever they were determined to be. The appellant repeatedly denied that the offers were made by Parker's attorney.

On June 27, 1983, trial of the underlying Parker case commenced. During the

---

3. The text of the April 28, 1981 letter from Jackson to Crislip is as follows, in part:

> In response to your letter requesting a demand from my client, we would hereby demand a good faith settlement within the policy limits. Since I am uninformed as to what the policy limits are, it is impossible for me to make an exact dollar demand. If you will write a letter to me telling me what the policy limits are, we will then demand a settlement within the policy limits. Nationwide's tact in the past in regard to other cases I have handled, specifically, the Miller case of which you are aware, is to do everything possible *not* to represent the best interests of their insured. Nationwide has not in any of the dealings I have had with it, had its insured's interest at heart and I am sure this is the present situation. To this date, there has been no settlement discussion between you and I because

> Nationwide does not want to settle the case but would like to keep its money as long as possible. I believe you will agree with me that this case is one of absolute liability on behalf of Nationwide's insured and that a jury could return a verdict in excess of $500,000.00 because of the substantial and permanent injuries my client, Delores Parker, has suffered. Therefore, if and when Nationwide exhibits any showing whatsoever of good faith, we will be pleased to talk with you regarding a settlement. As of this date, we are uninformed as to the policy limits and it seems that Mr. Shamblin's interests are not the best interests of Nationwide as an insurance company.

4. There was no response by Nationwide to Crislip's letter in the records submitted to this Court for review in this appeal.

course of the trial, two witnesses mentioned insurance in the presence of the jury. Based on this, Nationwide's attorney, Crislip, moved for a mistrial. The trial court took the motion under advisement during the noon hour recess. During the noon recess, Susan Wittemeir, an attorney from the firm of Goodwin and Goodwin, at Jackson's request conveyed a demand on behalf of Parker to Crislip in which Parker offered Shamblin and his company the following settlement: $40,000.00 from Shamblin personally plus whatever the court would determine the insurance coverage to be, if the mistrial motions were withdrawn.[5] Crislip immediately attempted to reach Nationwide by telephone in order to obtain authorization for the settlement. However, while this attempt was being made, the judge returned to the bench to resume the trial and denied Crislip's mistrial motions. Jackson at that time revoked Parker's offer of settlement.

The trial continued and on July 14, 1983, the jury returned a verdict in favor of Parker, awarding total damages in the amount of $775,000.00. Specifically, the jury found Shamblin to be 90% negligent and Buske Lines, Inc. to be 10% negligent. It was not until October 17, 1983, that the judge entered a decision in the declaratory judgment action. The lower court found that Shamblin's Nationwide insurance policy limits were only $100,000.00. Thus, Shamblin was left with personal liability

from the Parker case to the tune of $597,-500.00.[6]

On May 18, 1984, Shamblin filed suit against Nationwide, alleging that Nationwide [7] refused to settle within the policy limits and claiming that the company acted negligently and in bad faith. Shamblin further alleged that Nationwide breached its duty to him by failing to appeal the judgment against Shamblin.[8] It is the verdict in the bad faith case that is the subject of this appeal.

## PUNITIVE DAMAGES

The appellant claims that since Nationwide acted under a bona fide claim of right which was that the policy limits in this case could not be stacked and were limited to $100,000.00, and since Nationwide attempted to settle the claim for that amount, making a good faith offer of judgment of the policy limits into the court, the company did not act in bad faith and showed no malice in any form regarding the plaintiff's claim. Appellant accordingly maintains that the trial court erred by allowing the jury to consider and award punitive damages. The appellee, however, contends that the evidence clearly supports an award of punitive damages for Nationwide's willful, malicious and intentional refusal to settle the claim against its insured within the available policy limits.[9]

---

5. When the declaratory judgment action was filed, it too was assigned to Judge Herman Canady (the Parker case had previously been assigned to Judge Canady). The evidence indicated that on June 6, 1983, Crislip wrote to Judge Canady requesting that he decide the insurance coverage issue prior to the Parker trial in hopes that with the coverage issue being decided, a settlement could be reached prior to trial. The case which is the subject of the instant appeal was tried by Judge Patrick Casey.

6. This figure was brought out during the testimony of Richard E. Rowe. This was the excess verdict amount which was obtained by deducting the 10% attributable to Buske Lines, and Nationwide's $100,000.00 from the jury verdict in the Parker case.

7. A stipulation was entered into between the parties that Crislip was an agent of Nationwide.

8. The original complaint against Nationwide alleges that Nationwide breached its duty to

Shamblin "[i]n failing to accept Parker's offer to settle for the limits of Shamblin's Insurance Policy for whatever they were determined to be and/or in failing to appeal the judgment against Shamblin, . . . ." It is evident from the trial transcript, however, that Shamblin did not attempt to proceed on the failure to appeal claim.

9. The appellee, in support of their contention, argues that the evidence presented at trial established:

1. Nationwide evaluated the case early on and knew that it was a case of liability that was worth at least $500,000.00, well above the available policy limits.

2. Counsel for Parker offered to settle the case and release Shamblin well before trial for the Nationwide policy limits, whatever they were determined to be.

3. Nationwide refused this settlement demand and continued to offer only the $100,-000.00 they contended was available.

This Court addressed the issue of punitive damages and when they may be awarded against the insurer in the case of *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986). The facts in that case involved policyholders bringing suit against the insurance company to recover the value of a burned building. The insurance company had refused to pay for damages under the policy because it maintained that the policyholders had burned down the building. The reasons underlying the company's conclusion were the fact that the insureds were having financial problems, the mortgage payments on the building had been a drain on them financially, and the building was locked when the fire started. *Hayseeds,* 177 W.Va. at 326, 352 S.E.2d at 76. The most serious allegation made by the plaintiffs in the case was that the insurance company had failed to carefully investigate plaintiffs' financial circumstances. The evidence indicated that the insured had given the company access to all of their financial records and the company simply did not examine those records adequately before denying the insureds' claim. *Id.* Based on this evidence, a jury awarded $50,000.00 in punitive damages to the plaintiffs.

In reviewing this award of punitive damages this Court held that "[a]n insurer cannot be held liable for punitive damages by its refusal to pay on an insured's property damage claim unless such refusal is accompanied by a malicious intention to injure or defraud." *Id.* 177 W.Va. at 324, 352 S.E.2d at 74, Syl. Pt. 2. In refusing the punitive damage award in *Hayseeds,* the Court held that even though the plaintiffs' evidence did indicate that the company had "a preconceived disposition to deny the claim, that disposition did not rise to the level of malice that we have just articulated."[10] *Id.* 177 W.Va. at 331, 352 S.E.2d at 81.

We again addressed the issue of punitive damages as they apply to insurance companies in *Berry v. Nationwide Mut. Fire Ins. Co.,* 181 W.Va. 168, 381 S.E.2d 367 (1989). In the *Berry* case the insured brought suit against the insurer for failure to pay a claim under a homeowner's policy. The facts of that case revealed that there was no question that the insurance company knew that the insured had a legitimate claim and that the insured was not lying. The company acknowledged that certain items were covered under the policy, but continually suggested that there was some other reason causing damages to the insured. There was also evidence in which representatives within the companies working on the claim indicated that they would not settle the claim immediately, but might consider doing so at a later time. Finally, one of the insurer's representatives recommended to the company that the insured's policy should not be renewed, yet offered no reasons for such a decision. *Berry,* 181 W.Va. at 175–76, 381 S.E.2d at 374–75.

Under those facts, this Court held that "punitive damages may be awarded to an insured if the insurer actually knew that the claim was proper and the insured can prove that it was willfully, maliciously and intentionally denied." *Id.* 181 W.Va. at 176, 381 S.E.2d at 375. Consequently, we found that it was not error for the trial court to instruct the jury that punitive damages could be awarded. *Id.*

In the present matter, we follow our previous decisions in *Hayseeds* and *Berry* by reiterating that punitive damages may be awarded in favor of an insured against its insurer for failure to settle a claim within policy limits, but the policyholder must establish a high threshold of actual malice in the settlement process. Actual

4. Nationwide did not have anyone with authority to settle the case present or available during trial. Nationwide refused to give Mr. Crislip authority to settle the Parker case within policy limits, whatever they were determined to be, although Nationwide would be legally obligated to pay this amount.

10. The Court established a bright line rule regarding punitive damages when it held that punitive damages for failure to settle a property dispute shall not be awarded against an

insurance company unless the policyholder can establish a high threshold of actual malice in the settlement process. By 'actual malice' we mean that the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim.
*Hayseeds,* 177 W.Va. at 330, 352 S.E.2d at 80–81 (footnote omitted).

malice means that the insurer actually knew that the claim was proper, but the insurer nonetheless acted willfully, maliciously and intentionally in failing to settle the claim on behalf of its insured. However, under the facts now before the Court, we find that there was insufficient evidence to support the award of $1,500,000.00 in punitive damages and therefore reverse the lower court's judgment on this issue.

■ We base our decision on the fact that it is undisputed that there was a legitimate issue as to the policy limits applicable in the underlying case. While Nationwide's position was that those limits did not exceed $100,000.00, Parker's attorney's position was that those policy limits were $300,000.00.[11] This was a bona fide dispute and the insurer's persistence in asserting its position as to applicable limits cannot be deemed malicious. Additionally, the insurer did make an offer to settle within what it contended were the policy limits and even paid an offer of judgment into court, but that offer was refused. The only evidence which potentially could be the basis for a punitive damages claim is Nationwide's behavior at trial. A jury trial is a very fluid enterprise. The ebb and flow of the presentation of evidence and the rulings of the court are not always predictable, and as a result the viability of either side's case may be subject to dramatic change on short notice. Nationwide's failure either to give its trial counsel authority to enter into a settlement offer for policy limits, whatever they would subsequently be judicially determined to be, or to have someone with authority *actually available* in case such a settlement offer was made, constituted, at best, poor judgment and at worst, a rather egregious disregard for the protection of its insured.

Still, under all the facts and circumstances of the case, Nationwide's conduct fails to reach the high standard of willful, malicious and intentional conduct required to justify an award of punitive damages.

## STANDARDS IMPOSED ON INSURANCE COMPANIES FOR FAILURE TO SETTLE

There are essentially three standards which courts have imposed on liability insurers in determining whether the insurer has met its duty to its insured. Those standards involve strict liability, negligence and bad faith. *See generally Schwartz, Statutory Strict Liability for an Insurer's Failure to Settle: A Balanced Plan for an Unresolved Problem,* 1975 Duke L.J. 901; Annotation, *Liability Insurer's Negligence or Bad Faith in Conducting Defense as Ground of Liability to Insured,* 34 A.L.R.3d 533 (1970 & Supp.1989).

The appellant contends that the trial court erred in adopting negligence as the sole standard to determine whether a liability insurer had complied with its duty to its insured regarding the settlement of third-party claims. The appellant asserts that the correct standard to be applied in actions such as these is one of bad faith. Even though the appellees accepted the negligence standard imposed by the trial court, they contended at trial and now before this Court, that a strict liability standard should apply. Appellees argue, however, that the evidence presented at trial supports a verdict under whatever standard this Court adopts.

The courts which have applied the strict liability standard have held that an insurer who fails to settle within policy limits does so at its own risk, and although its position may not have been entirely groundless, if the denial is later found to be wrongful, it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract. *See Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967); *Rova Farms Resort, Inc. v. Investors Insurance Co.,* 65 N.J. 474, 323 A.2d 495 (1974). Further, the Supreme Court of

**11.** Significantly, the lower court did find in favor of Nationwide on the issue of the policy limits. This Court subsequently affirmed the declaratory judgment made by the lower court in *Shamblin v. Nationwide Mut. Ins. Co.,* 175 W.Va. 337, 332 S.E.2d 639, 646 (1985).

California articulated that under its strict liability standard

> the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer. Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer is a reasonable one.

*Johansen v. California State Auto. Assn. Inter–Ins. Bureau*, 15 Cal.3d 9, 123 Cal. Rptr. 288, 538 P.2d 744, 748–49 (1975).

The negligence standard generally involves an analysis of whether the insurer's breach of its duties of good faith and fair dealing with its insured is one which was reasonable under the circumstances. In other words, do the facts show the absence of any reasonable basis for settling the claim within policy limits. *See Farmers Group, Inc. v. Trimble*, — Colo. —, 691 P.2d 1138, 1142 (1984) (en banc).

The bad faith standard is based on the premise that an insurer may be liable for an excess verdict above its policy limits when it is determined that the insurance company's conduct amounted to arbitrary, reckless, indifferent or intentional disregard of its insured's interest. *See Commercial Union Ins. Co. v. Liberty Mut. Ins. Co.*, 426 Mich. 127, 393 N.W.2d 161 (1986); *State Farm Mut. Auto. Ins. Co. v. Floyd*, 235 Va. 136, 366 S.E.2d 93 (1988).

Some courts have applied a hybrid of the bad faith and negligence standards.[12] This hybrid standard requires the insured to show the absence of a reasonable basis for denying benefits and the defendant's knowledge of or a reckless disregard for the lack of a reasonable basis for denying the claim. Thus, under this hybrid standard, "[a]n insurer will have committed the tort of bad faith only when it has denied a claim without a reasonable basis for doing so, that is, when the claim is not fairly debatable." *Mowry v. Badger State Mut. Cas. Co.*, 129 Wis.2d 496, 516, 385 N.W.2d 171, 180 (1986).

The lower court in the instant case applied a negligence standard for the jury's use in determining whether the appellant should be liable for the excess verdict in this case. More specifically, the court instructed the jury as follows:

> Clarence Shamblin is contending that Nationwide Insurance Company should be held responsible for the jury award against him in excess of his insurance policy limits.
>
> In West Virginia, for an insurance company to be held responsible for a jury award in excess of its insured's policy limits, it must be proven that the insurance company acted negligently in not accepting settlement offers or in not settling the case. In determining whether the insurance company was negligent, the test is whether a reasonable prudent insurance company would have accepted a settlement offer by the injured party or would have attempted to settle the case within its policy limits.
>
> The insurance company must take into account the interest of its insured and give its insured's interest at least as much consideration as it gives its own interest. What this means, as a practical matter, is that the insurance company should evaluate the chance that a jury award might be entered against the insured in excess of the policy limits and in deciding whether to settle consider its insured's interest as well as its own interest.
>
> In this case, you may find for Clarence Shamblin and against Nationwide Insurance if you find from a preponderance of the evidence that Nationwide Insurance

---

12. This Court first examined the bad faith and negligence standards in *Speicher v. State Farm Mut. Auto. Ins. Co.*, 151 W.Va. 292, 151 S.E.2d 684 (1966). In that case we refrained from adopting either standard holding that "[s]ince it is the opinion of this Court, upon the evidence of this case, as a matter of law, that the defendant was guilty of neither negligence nor bad faith, it will not be necessary for the Court to adopt either of those rules or to go into detail in this opinion in attempting to distinguish between them." *Speicher*, 151 W.Va. at 294, 151 S.E.2d at 685.

Company did not act as an unordinary prudent insurance company with regard to attempts to settle the case of Delores Parker against Clarence Shamblin.

In this regard, you may find that Nationwide Insurance Company was negligent and did not act as an unordinary prudent insurance company if you find from a preponderance of the evidence:

1. That Nationwide Insurance Company did not act as a reasonable prudent insurance company in rejecting the settlement offer of Rodney Jackson, if any, or

2. That Nationwide Insurance Company did not act as a reasonable prudent insurance company because it did not offer before trial to settle for Clarence. Shamblin's policy limits, whether $100,000.00, $200,000.00 or $300,000.00, the exact amount of coverage to be determined later by the Court in the suit to establish policy limits, or

3. That Nationwide Insurance Company did not act as a reasonable prudent insurance company because it did not have an adjuster at trial with settlement authority or an adjuster with settlement authority available at all times to talk to Steve Crislip during the trial.

We do not believe this was an erroneous instruction of law, but recognizing this issue is one of first impression in West Virginia, we believe it necessary to discuss more fully what standard of proof will be applicable in future actions against insurers by their insureds for failure to settle third party liability claims against them within policy limits.

The test for negligence is clear in that "[t]he question of whether an insurer had breached its duties of good faith and fair dealing with its insured is one of reasonableness under the circumstances." *Farmers Group Inc.*, 691 P.2d at 1142; *see also Employers Equitable Life Ins. Co. v. Williams*, 282 Ark. 29, 665 S.W.2d 873 (1984); *Noble v. National Am. Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). The issue thus becomes what is reasonable conduct on the part of an insurance company in failing to settle a claim within policy limits under all the circumstances of the case.

Thus, we turn to the decision of the Supreme Court of New Hampshire in *Dumas v. Hartford Accident & Indem. Co.*, 94 N.H. 484, 56 A.2d 57 (1947). In that case, the court was faced with a situation in which Hartford Accident & Indemnity Co. (hereinafter referred to as Hartford) failed to settle a claim within the limits of a policy which provided coverage against personal injury caused by an automobile accident.

Specifically in *Dumas*, the policy limit involved was $5,000.00 and the plaintiff in the underlying action against Hartford's insured had offered to accept a settlement of $4,000 originally. 56 A.2d at 61. This settlement figure rose to $4,750.00 and this offer stood during the trial. *Id.* Hartford had originally estimated the settlement value of the case to be between $2,000.00 and $2,500.00; however, the company also knew before trial that the plaintiff in the underlying action had out-of-pocket expenses estimated at $2,971.50. *Id.* Hartford elected not to settle even though the evidence at trial indicated clear liability on the part of Dumas, the insured, and consequently the jury returned a verdict of $12,000.00. *Id.* at 58.

The court found that the insurance company was liable for the excess jury verdict under a negligence standard. First, the court emphasized the significance of the insurer's duty to its insured when it reasoned that:

The duty of the insurer was not only to pay on behalf of the insured all sums the latter should become obligated to pay because of bodily injury within the policy limit of $5,000, but also to save the insured harmless from any and all liability caused by accident and arising out of the ownership, maintenance or use of his automobile in so far as it could do so by a reasonable performance of its service to settle claims. It is a well-recognized rule in the law of negligence that, when one knows or has reason to anticipate that the person, property, or rights of another are so situated as to him that they may

be injured through his conduct, it becomes his duty so to govern his action as not negligently to injure the person, property, or rights of that another.

*Id.* at 60 (citing *Attleboro Mfg. Co. v. Frankfort Marine, Accident & Plate Glass Ins. Co.,* 240 F. 573, 579 (C.C.A. Mass.1917)).

Next, the court addressed whether or not Hartford had acted reasonably under the circumstances. The court focused upon the fact that the liability insurer has almost absolute control over settlement negotiations and reasoned that "in deciding whether or not to settle the insurer must be as quick to compromise and dispose of the claim as if it itself were liable for any excess verdict." *Dumas,* 56 A.2d at 60. The court further held that in deciding whether to take a case to trial that "the standard of due care [requires] that the insurer cannot be too venturesome and speculate with a trial of the issues in the ... case at the risk of the insured." *Id.* Finally, the court held that:

> Something more than an act of judgment is involved in the decision of the insurer to stand trial or to settle. A judgment carefully arrived at must be accompanied by conduct consistently [sic] therewith. So far as its interest is concerned, there must be a willingness within the policy limit reasonably to spend its money in purchasing immunity for the insured. Due care must be exercised in ascertaining all the facts of the case as to liability and damages, in learning the law and in appraising the danger to the insured of being obliged to pay the excess portion of a verdict. While the insurer has a reasonable right to try its case in court, it cannot be unduly venturesome at the expense of the insured. The caution of the ordinary person of average prudence should be employed.

*Id.*

■ Thus, we follow the reasoning of both the court in *Farmers Group* and the court in *Dumas,* but take the concepts embodied therein one step further by adopting what might essentially be said to constitute a hybrid negligence-strict liability [13] standard. We believe that wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to so settle and where such settlement within policy limits would release the insured from any and all personal liability, that the insurer has prima facie failed to act in its insured's best interest and that such failure to so settle prima facie constitutes bad faith towards its insured.

■ In other words, it will be the insurer's burden to prove by clear and convincing evidence that it attempted in good faith to negotiate a settlement, that any failure to enter into a settlement where the opportunity to do so existed was based on reasonable and substantial grounds, and that it accorded the interests and rights of the insured at least as great a respect as its own. Whether an insurer demonstrates that it comported with this very strong obligation of good faith to its insured must necessarily turn on the facts of each case, as the factual scenarios are as varied and endless as the imagination. In assessing whether an insurer is liable to its insured for personal liability in excess of policy limits, the proper test to be applied is whether the reasonably prudent insurer would have refused to settle within policy limits under the facts and circumstances of the case, bearing in mind always its duty of good faith and fair dealing with its insured. Further, in determining whether the efforts of the insurer to reach settlement and to secure a release for its insured as to personal liability are reasonable, the trial court should consider whether there was an appropriate investigation and evaluation of the claim based upon objective and cogent information; whether the insurer had a reasonable basis to conclude that there was a genuine and substantial issue as to liability of its insured; and whether there was potential for substantial recovery of an excess verdict against its insured. Not one of these factors may be considered to the exclusion of the others. For instance, an insurer might have a genuine and reason-

**13.** *See Johansen,* 538 P.2d at 744; *Crisci,* 426 P.2d at 173.

able issue as to its insured's liability, but if the settlement offer can be considered fair when cast against the possibility of a substantial excess verdict against the insured, the liability issue in and of itself may not be sufficient grounds for the insurer to have refused to settle. Likewise, it is the insurer's burden to act in good faith in actively seeking settlement and a release of its insured from personal liability, as opposed to the obligation being solely that of the injured party, his attorney, or the insured. Nor is this list of factors to be considered in any way exhaustive. Any salient fact or circumstance regarding the reasonableness of the insurer's actions, and its concern or lack of concern for the protection of its insured, may be considered in determining whether the insurer is liable to its insured for any judgment obtained against him in excess of policy limits.

■ Therefore, in the case at bar, when Nationwide rejected the settlement offers,[14] it subjected itself to liability for the excess damages incurred by its insured. There is no question that the settlement offer made by the plaintiff in the underlying action was a reasonable one, since the damages incurred by that plaintiff had already been evaluated by Nationwide as far exceeding the policy limits, whatever they were determined to be. Further, the facts in this case uncontrovertedly showed liability on the part of Shamblin's company. Thus, there was an absence of any genuine issue regarding liability which could have been demonstrated by Nationwide. The insurer's failure under these circumstances to settle for policy limits, whatever they were later determined to be, clearly indicates a lack of an aggressive, good faith effort to settle and protect its insured. For had they accepted this offer, their insured would have been fully protected from personal liability, yet the insurer would not have waived in any way its right to litigate the legitimate policy limits issue. Therefore the $1,000,000.00 jury award for compensatory damages is hereby affirmed.

## SUMMARY JUDGMENT

■ The appellant also argues that the trial court erred by failing to grant summary judgment in its favor and by failing to direct a verdict in its favor at the close of the plaintiff's case-in-chief. In support of this argument, the insurer contends it never had the opportunity to settle, and that such opportunity is necessary in order to support a cause of action under any of the standards for a judgment in excess of policy limits. The appellee, on the other hand, argues that Nationwide's contention that it never had an opportunity to settle the case prior to the mistrial motions completely ignores the plaintiff's evidence. The appellee contends that evidence was presented which supported a finding that an offer to settle within the policy limits, whatever that was eventually determined to be, was made before trial on at least two occasions, and that a third offer to settle Shamblin's excess exposure was made during the course of the trial. Appellant argues that the fact that the insurer made an offer of judgment of $100,000.00 which later was determined to be the applicable policy limits, demonstrates as a matter of law that they attempted to settle in good faith. However, in view of the fact that a legitimate legal dispute existed as to the amount of coverage, the plaintiff in the underlying case (Parker) could not have been expected to accept the offer as presented until the issue of policy limits had been resolved. Neither party should have been forced to adopt a position which would waive its rights on that issue. Consequently, the "offer" of the insurer was not in reality one that the plaintiff in the underlying case could accept, and therefore was not in that sense a meaningful offer of settlement.

Furthermore, In *Aetna Cas. and Sur. Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963), we held that "a motion for summary judgment should be

14. There were essentially two offers of settlement made, the first one prior to trial when Parker offered to settle for policy limits, whatever they were later judicially determined to be; and the second one during trial when Parker offered to settle for $40,000.00 plus whatever policy limits were determined to be.

granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law[,]" and "[a] party is not entitled to summary judgment unless the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party can not prevail under any circumstances." 148 W.Va. at 171, 133 S.E.2d at 777.

It appears quite clearly that there were genuine issues of fact in dispute in this case which were necessary for a jury to resolve. This is evident upon reading the parties' contentions with regard to this particular assignment of error. Consequently, the trial court was not in error when it refused to grant the motion for summary judgment.[15] *See Bauer Enterprises, Inc. v. Frye,* 181 W.Va. 234, 382 S.E.2d 71 (1989).

### THIRD–PARTY ACTION

Next, the appellant contends that based upon information gained during discovery, the appellant sought permission from the court to file a third-party action against the law firm of Goodwin & Goodwin, which was denied. According to the appellant, discovery revealed that Goodwin & Goodwin, hired by Shamblin as personal counsel, breached their duty to protect the appellee from the excess exposure by refusing to accept settlement offers within Shamblin's insurance policy limits with Nationwide.[16] Thus, Nationwide sought contribution and/or indemnification from the proposed third-party defendant. This third-party action was based on the fact that the Goodwin & Goodwin law firm had been personal counsel to Shamblin in the underlying law suit against him and was hired specifically to protect him from an excess verdict.

In contrast, the appellee contends that the refusal of the third-party action by the

trial court was clearly within the discretion of the lower court. Further, appellee argued that the third-party action was merely a delay tactic by the appellant in that the motion, made about two months prior to trial, was made more than four years after the filing of the lawsuit and more than two and one-half years after the appellant first mentioned the possibility of bringing a claim against the law firm.

West Virginia Rule of Civil Procedure 14(a) provides in pertinent part that "[a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." This court, in interpreting W.Va.R.Civ.P. 14(a), stated that the provisions of the rule are "within the sound discretion of the trial court and where the third party procedure may create confusion or cause complicated litigation involving separate and distinct issues the trial court does not abuse its discretion in refusing to allow impleader under third party practice." Syl. Pt. 5, in part, *Bluefield Sash & Door Co., Inc. v. Corte Constr. Co.,* 158 W.Va. 802, 216 S.E.2d 216 (1975), *overruled in part on other grounds, Haynes v. City of Nitro,* 161 W.Va. 230, 240 S.E.2d 544 (1977). In this opinion we also held that a trial court should not allow impleader under this rule "if there is a possibility of prejudice to the original plaintiff or the third party defendant." Syl. Pt. 3, in part, *Bluefield Sash & Door Co.,* 158 W.Va. 802, 216 S.E.2d at 217.

Under the facts of the present case, we find no abuse of the trial court's discretion in its decision to deny appellant's motion for a third-party action. The appellant's unexplained delay in filing the motion until shortly prior to trial would have prejudiced the plaintiff had it been granted.

---

**15.** Likewise the trial court committed no error when it refused to direct a verdict at the close of the plaintiff's case-in-chief.

**16.** Specifically the basis for the third-party complaint was that the law firm of Goodwin and Goodwin failed to take part in the settlement

negotiations which occurred during trial and that this was ultimately the result of that law firm sending in an inexperienced associate to handle the matter instead of one of the firm's more experienced lawyers.

Also there was a strong possibility of confusion of the issues since the third-party complaint was essentially based on legal malpractice and the underlying action was a bad faith insurance claim. Finally, there is nothing which precluded the appellant from filing a separate action for indemnification and/or contribution.

## REBUTTAL EVIDENCE

■ Appellant argues that the plaintiff below offered "rebuttal evidence" consisting of a portion of an alleged page from a Nationwide claims manual which was unduly prejudicial and misleading in that the last paragraph states that an excess verdict only results from "carelessness or highly prejudicial mishandling of a claim." Appellant contends that the admission of this portion of the manual not only violated Rule 403 of the West Virginia Rules of Evidence,[17] but that it also violated Rule 106 of these same rules.[18]

Upon review of the record in this matter, we find that this particular contention raised by the appellant is without merit. Nationwide never attempted to call a witness or to reopen its case on this particular point. Further, the appellant never attempted to have the whole claims manual placed in evidence. Consequently, the trial court never made a ruling which denied

Nationwide's presentation of further evidence regarding the claims manual. The appellant therefore fails to show any abuse of the lower court's discretion in the admission of the portion from the claims manual. *See* Syl. Pt. 5, *Grillis v. Monongahela Power Co.*, 176 W.Va. 662, 346 S.E.2d 812 (1986).

## MOTION IN LIMINE

■ The appellant asserts that the trial court erred when it refused to direct a verdict with regard to Nationwide's duty to defend. Specifically, appellant contends that the trial court should not have permitted testimony concerning Nationwide's decision not to appeal since Nationwide had a clear right not to do so[19]; consequently, Nationwide was prejudiced by the insinuation that the company wrongfully abandoned its duty to appeal.

The appellee, however, argues that first and foremost, Shamblin did not present evidence against the insurance company based on a failure to appeal the excess jury verdict. Nor were there any arguments or instructions on this issue. Thus, no jury verdict was given regarding Nationwide's failure to appeal. Finally, the testimony regarding the failure of the insurance company came into evidence during appellant's cross-examination of a witness[20] without

---

17. West Virginia Rule of Evidence 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

18. West Virginia Rule of Evidence 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."

19. The pertinent language contained within Nationwide's insurance policy provides that "the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements."

20. The pertinent testimony at issue was brought in during the cross-examination of the appellee's witness, Richard E. Rowe:

(By Mr. Fowler)
Q: Now, I don't understand the appeal thing. Nationwide refused to appeal after they paid their coverage; and when they refused to appeal was after the Supreme Court said that their coverage was $100,000. Is that correct?
A: That's not correct.
Q: They didn't—When did they do that?
The Court: The refusal to take the appeal.
A: Judge Canady, he decided the motion for a new trial and the coverage question, I believe, on approximately the same day. He denied the motion and settled the question on coverage and said it was $100,000. It took many months to appeal that question to the West Virginia Supreme Court of Appeals. And so Judge Canady's opinion had been rendered, but the Supreme Court of Appeals had not passed on that.
 . . . .
Q: All right, so when Judge Canady gave his decision, which was later found to be plainly

objection. The appellant did not file the motion in limine until after this testimony was presented to the jury.

Based upon our review of the record in this case, we again find that the lower court committed no error in its refusal to grant the appellant's motion in limine. Not only was the whole issue of Nationwide's duty to defend not before the jury during its deliberations, but the issue would not have gotten before the jury at all but for testimony elicited during appellant's cross-examination. Not only was the appellant's motion filed untimely, but the appellant cannot benefit from the consequences of error it invited.

## TRIAL COURT'S PARTICIPATION

 Finally, the appellant's last assignment of error involves whether or not the lower court acted improperly by continually interjecting itself into the trial with ponderous cross-examination and opinions as to the witnesses. Although a review of the record indicates that the lower court did participate in the questioning of witnesses, Rule 614(b) of the West Virginia Rules of Evidence states that "[t]he court may interrogate witnesses, whether called by itself or by a party, but in jury trials the court's interrogation shall be impartial so as not to prejudice the parties." We find no error committed by the lower court through its participation at trial for it is evident upon a review of the transcript that the trial court did a fair amount of interrupting on both sides and the information sought by the trial court's questioning did not involve any attempt to prejudice either side, but rather was more for clarification purposes.

Based upon the foregoing opinion, the judgment of the Circuit Court of Kanawha County is hereby reversed in part and affirmed in part.

Reversed in part.

Affirmed in part.

NEELY, Chief Justice, concurring:

I agree with the final result in this case, but I believe that the majority takes us on a long trip that is unnecessary. Can you honestly imagine a situation where an insurance company fails to settle within the policy limits, the policyholder gets stuck with an excess judgment, and this court *does not* require the insurance company to indemnify the policyholder? That will happen the same day the sun rises in the West! As far as I am concerned, even if the insurance company is run by angels, archangels, cherubim and seraphim, and the entire heavenly host sing of due diligence and reasonable care, I will *never*, under any circumstances, vote that a policyholder instead of an insurer pays the excess judgment when it was possible to settle a case within the coverage limits.

When I buy insurance, I buy protection from untoward events. I do not object to an insurance company's vigorous defense of a claim, including going to jury trial and exhausting every appeal. Furthermore, as a policyholder, I will diligently assist my insurer to vindicate its rights and protect its reserves. However, I draw the line when the insurer decides that in the process of protecting its reserves, it will play "you bet *my* house." The insurance company can bet as much of its own money as it wants, and it can bet its own money at any odds that it wants, but it cannot bet one single penny of *my* money even when the odds are ten million to one in its favor!

right, that was the same day he refused a new trial of the case in the Parker case. Now, as I understand it, the first steps of the appeal were taken by Mr. Crislip, but Nationwide, using a policy provision that was clearly written, decided that they would not appeal the case because the policy specifically said once they paid their obligation they had no further duty to defend. Is that correct?
A: Mr. Crislip initially undertook the appeal and then advised me that he had received this call from Nationwide, and they were not going to pursue it any more.
Q: And that was because the clear wording of the policy said that once they paid their legal obligation they had no further duty to defend?
....
A: Yes, I'm aware that there is a policy provision that says that in their policy. I'm not sure if that is the law, but that is in their policy.

Thus, I would replace syllabus points 2, 3, and 4 of the majority opinion with the following simple syllabus point:

Wherever there is a failure on the part of an insurer to settle within policy limits where there exists the opportunity to settle and where such settlement within policy limits would release the insured from any and all personal liability, the insurer is then liable to the policyholder for any damages recovered against the policyholder that are in excess of the policy limits.

This concise syllabus, I believe, creates a clear, bright line rule that even the dimmest lawyer, adjuster, insurance executive or judge can understand. The rule is simple, uncomplicated, eminently just, and serves the desirable jurisprudential policy of effecting the equal operation of legal precepts because it does not allow one millimeter of room for judge, jury or appellate discretion. Furthermore, and much more to the point, this incisive syllabus would severely discourage the running of meters, the building of files, and the needless oppression of the weak and the helpless to which both running meters and big files ultimately lead.