419 S.E.2d 696

**MAGNET BANK, F.S.B., Plaintiff Below, Appellee,**

v.

**William A. BARNETTE, Frank M. Morrison, and Mountain Top Athletic Club, Inc., A Corporation, Defendants and Third–Party Plaintiffs Below, Appellants,**

v.

**Robert P. MARTIN, Third–Party Defendant Below, Appellee.**

**No. 20406.**

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1992.

Decided May 29, 1992.

Michael C. Allen and Christopher P. Bastien, Charleston, for appellee Robert P. Martin.

David A. Sims and Michele W. Good, Wallace, Ross & Harris, Elkins, for appellants.

PER CURIAM.

In this appeal, the defendants and third-party plaintiffs assert that the trial court erred in dismissing their complaint. The basis for the trial court's dismissal was that the third-party complaint was unrelated to the matters arising out of the original complaint. The court concluded that the third-party complaint did not meet the criteria of Rule 14 of the West Virginia Rules of Civil Procedure, which governs third-party actions. We disagree.

Rule 14(a) permits a defendant to bring a third-party complaint against "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." Similar language is found in Rule 14 of the Federal Rules of Civil Procedure, from which our Rule 14 was taken.

The appellee third-party defendant relies mainly on *Shamblin v. Nationwide Mutual Insurance Co.*, 183 W.Va. 585, 396 S.E.2d 766 (1990), where we affirmed the trial court's initial denial of a motion to bring a third-party action.[1] In *Shamblin,* the defendant attempted to file the third-party complaint more than four years after the lawsuit was filed and two months before the actual trial. In Syllabus Points 5 and 6 of *Shamblin,* we quoted with approval Syllabus Point 3, in its entirety, and Syllabus Point 5, in part, of *Bluefield Sash & Door Co., Inc. v. Corte Construction Co.*, 158 W.Va. 802, 216 S.E.2d 216 (1975), *overruled on other grounds by Haynes v. City of Nitro*, 161 W.Va. 230, 240 S.E.2d 544 (1977):

> "5. 'The provisions for impleader under Rule 14(a), West Virginia Rules of Civil Procedure, ... are within the sound discretion of the trial court and where the third party procedure may create confusion or cause complicated litigation involving separate and distinct issues the trial court does not abuse its discretion in refusing to allow impleader under third party practice.' ...

> "6. 'Impleader under Rule 14(a), West Virginia Rules of Civil Procedure, should not be allowed if there is a possibility of prejudice to the original plaintiff or the third party defendant.' ..." (Citations omitted).

*Bluefield Sash & Door* involved a certified question relating to a Rule 14(a) third-party action. We concluded that the trial court had not abused its discretion by dismissing the third-party action, because the issues in the third-party suit were unrelated to those in the main action. We spoke in Syllabus Point 1 of *Bluefield Sash & Door* as to the rationale behind Rule 14:

> "The purpose of Rule 14(a), West Virginia Rules of Civil Procedure, permitting impleader of a third party defendant by the original defendant, is to eliminate circuity of actions when the rights of all three parties center upon a common factual situation."

We have not had occasion to discuss in any detail the type of claim which the defendant must assert to meet the require-

---

**1.** Rule 14(a) requires a defendant to seek leave of court to file a third-party action unless it is served "not later than 10 days after he serves his original answer."

ment of Rule 14(a) that the third-party defendant "is or may be liable to him for all or part of the plaintiff's claim[.]" The federal courts have considered this question and in 3 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 14.07(1) at 14–45–46 (1991), this summary is given:

> "Thus, 'claim' is defined transactionally, and has nothing to do with the legal theory upon which a party relies. The fact that the third-party complaint may be based upon a different legal theory from the underlying case is irrelevant; the question is whether the assertion of liability against the third-party defendant is derivative of the same transaction, occurrence or nucleus of operative fact as the underlying claim by the plaintiff. If the transactional relatedness is present, impleader is proper even if the third-party complaint will be tried to the court while the underlying action will be tried to a jury. In sum, it is clear that the remedial purpose of Rule 14 requires that it be interpreted liberally to promote its underlying purposes." (Footnotes omitted).

In this case, the defendants had borrowed $35,000 from Magnet Bank in April of 1984 and, as security for the loan, pledged their leasehold estate, including a building and the fixtures, equipment, and inventory located therein. The lessor of the property filed for bankruptcy in 1985. After the bankruptcy filing, the defendants discovered that the lease had not been recorded. As a result, the bankruptcy court declared the lease void in November 1987 and caused the loss of the security to the Bank. (The Bank had sued the appellants in November 1986 for the amount due on the loan.)

In June of 1989, the appellants filed a motion to serve a third-party complaint on the defendant-appellee, which the trial court granted. Thereafter, in December of 1989, the appellants settled with the Bank and, in July of 1990, the appellee filed his motion to dismiss the third-party complaint. The circuit judge, in granting the motion, referred to the *Shamblin* case and concluded that there was a lack of common issues. He reasoned that the original claim by the Bank was to collect on a debt, while the third-party claim centered on a theory of attorney malpractice in failing to record the lease.

From a purely factual analysis, it appears that the third-party claim is derived from the original loan to the Bank. Certainly, the solvency of the security constituted a substantial interest to the Bank, but was of equal importance to the individual guarantors of the loan. These individuals, who were named defendants in the Bank's suit, had a right to claim that if the security agreement had been validated by a timely recording of the lease, their personal liability would have been at least diminished, if not offset, by the security.

These facts are analogous to those in *May's Family Centers, Inc. v. Goodman's, Inc.,* 104 F.R.D. 112 (N.D.Ill.1985), where May's sued Goodman's because of its refusal to consent to an assignment of May's lease. Goodman's, in turn, filed a third-party complaint against its law firm based on the claim that if there was any legal impropriety in the failure to consent to the assignment, it was due to the negligence of the law firm. The court, in upholding the third-party complaint, stated:

> "[T]here is considerable overlap between the facts necessary to establish May's breach of contract claim and those underlying Goodman's malpractice claim.... To require Goodman's to duplicate those proofs in a separate action would not only waste resources (including judicial resources)—it would also create an unfair risk of inconsistent determinations from the same facts in the two actions." 104 F.R.D. at 116.

In *Taylor v. G I Export Corp.,* 78 F.R.D. 494 (E.D.N.Y.1978), the plaintiff sued for breach of contract. The defendant had agreed to purchase the plaintiff's two corporations. The defendant filed a third-party complaint alleging that the negligence of Arthur Andersen & Company, an accounting firm, in preparing financial statements had caused the contract not to be performed. The court rejected the motion to dismiss the third-party claim because the

underlying action proceeded on a breach of contract theory, while the third-party claim was based on negligence of the accounting firm:

"The law requires no such unjust result. There can be no doubt that if Arthur Andersen was negligent and that negligence proximately caused damages to G I Export, it could recover in a separate action.... To say that such a claim for damages by G I Export cannot be litigated in the very proceeding which will determine whether there was damage is to make litigation a game." 78 F.R.D. at 495–96.

See also Monarch Life Ins. Co. v. Donohue, 702 F.Supp. 1195 (E.D.Pa.1989); O'Mara Enterprises, Inc. v. Mellon Bank, N.A., 101 F.R.D. 668 (W.D.Pa.1983).

As earlier stated, we find that there was a sufficient factual nexus to warrant a Rule 14(a) procedure. We, therefore, conclude that the trial court erred in dismissing the third-party action, and its judgment is, therefore, reversed.

Reversed.